UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- X
                                               :

SECURITIES AND EXCHANGE COMMISSION,    :
                                               :

                       Plaintiff,        :        Civil Action No. 08-CV-3868 (DAB)
                                                 :

           v.                           :
                                                 :

MARC J. GABELLI,                           :
and BRUCE ALPERT,                    :
                                                 :

                      Defendants.       :
                                                 :
------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT BRUCE ALPERT'S
MOTION TO DISMISS THE COMPLAINT**

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

*Counsel for Bruce Alpert*

# TABLE OF CONTENTS

**Page**

Preliminary Statement ...................................................................................................1

Summary Of Factual And Legal Background .................................................................2

Argument ......................................................................................................................5

I.  MOST OF THE SEC'S CLAIMS ARE TIME-BARRED AND MUST BE DISMISSED.......5

    A.    The SEC's Claims For Punitive Relief Are Subject To A Five-Year Statute Of Limitations..........................................................................................................5

    B.    Most Of The SEC's Claims Accrued More Than Five Years Ago. ......................7

    C.    The Statute Of Limitations Cannot Be Tolled.....................................................8

        1.    No Allegations Of Wrongful Concealment .................................................8

        2.    No Allegations That Concealment Prevented Discovery .........................11

        3.    No Allegations Of Diligence .................................................................11

II.  TO THE EXTENT THE SEC'S CLAIMS ARE NOT TIME-BARRED, THEY ARE NONETHELESS DEFICIENT AND MUST BE DISMISSED. ...........................................11

    A.    The SEC Does Not Allege A Violation Of Section 10(b) Or 17(a) With Particularity..........................................................................................................12

        1.    The SEC Fails To Allege With Particularity That Alpert Misrepresented Any Material Facts Or Omitted To State Any Such Facts He Had A Duty To Disclose. ......................................................................................12

            a)    The SEC Does Not Allege A Misrepresentation With Particularity..........................................................................12

            b)    The SEC Does Not Allege An Actionable Omission With Particularity..........................................................................13

            c)    The SEC Fails To Allege A Material Misrepresentation Or Omission. ...........................................................................14

        2.    The SEC Fails To Allege With Particularity That Alpert Participated In Any Scheme..................................................................................15

        3.    The SEC Fails To Allege With Particularity That Alpert Acted With The Requisite Intent.................................................................................16

    B.    The SEC Does Not Allege Alpert Aided And Abetted A Violation Of The Adviser's Act........................................................................................................20

III.  THE REMEDIES SOUGHT BY THE SEC ARE UNAVAILABLE. ...................................24

Conclusion ...................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*3M Company v. Browner,*
17 F.3d 1453 (D.C. Cir. 1994)..................................................................5, 7, 8

*ATSI Commc'ns v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007) .......................................................................1, 12

*Aaron v. SEC,*
446 U.S. 680 (1980)..................................................................................16, 24

*Abercrombie v. Andrew College,*
438 F. Supp. 2d 243 (S.D.N.Y. 2006) ......................................................... 8, 9

*Armstrong v. McAlpin,*
699 F.2d 79 (2d Cir. 1983) ...........................................................................23

*Austin v. Bradley, Barry & Tarlow, P.C.*
836 F. Supp. 36 (D. Mass. 1993) ..................................................................23

*Atlantic Gypsum Co. v. Lloyds International Corp.,*
753 F. Supp. 505 (S.D.N.Y. 1990) ................................................................19

*Beck v. Mfrs. Hanover Trust Co.,*
820 F.2d 46 (2d Cir. 1987), *overruled on other grounds,*
*United States v. Indelicato,* 865 F.2d 1370 (2d Cir. 1989) ............................16

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007)....................................................................................5

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass,*
754 F.2d 57 (2d Cir. 1985) ...........................................................................23

*Butala v. Agashiwala,*
916 F. Supp. 314 (S.D.N.Y. 1996) ..................................................................8

*Chill v. General Electric Co.,*
101 F.3d 263 (2d Cir. 1996) ..........................................................................20

*Corcoran v. New York Power Auth.,*
202 F.3d 530 (2d Cir. 1999), *cert. denied,* 529 U.S. 1109 (2000)......................8

*Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991), *cert. denied,* 503 U.S. 960 (1992)...........................1

*U.S. v. Dhafir*,
    461 F.3d 211 (2d Cir. 2006) ........................................................................1

*Daly v. United Ass'n of Plumbers and Pipefitters of U.S. and Canada*,
    No. 96 Civ. 9060, 1997 WL 566186 (S.D.N.Y. Sept. 11, 1997).......................8

*Denny v. Barber*,
    576 F.2d 465 (2d Cir. 1978) .......................................................................11

*Domenikos v. Roth*,
    No. 07-0406-cv., 2008 WL 2329315 (2d Cir. Jun. 5, 2008) ............................5

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)....................................................................................16

*Finkelman v. New York State Police*,
    No. 06 Civ. 8705, 2008 WL 821833 (S.D.N.Y. Mar. 26, 2008) .......................8

*Fitzgerald v. Citigroup, Inc.*,
    No. 03 Civ. 4305, 2007 WL 582965 (S.D.N.Y. Feb. 23, 2007).......................11

*Francis v. Blaikie Group*,
    372 F. Supp. 2d 741 (S.D.N.Y. 2005), *aff'd*, 177 Fed. Appx. 121 (2d Cir. 2006)..............5

*Glazer v. Formica Corp.*,
    964 F.2d 149 (2d Cir. 1992) ...................................................................13, 14

*Gorman v. Consol. Edison Corp.*,
    488 F.3d 586 (2d Cir. 2007) ........................................................................5

*Howard v. SEC*,
    376 F.3d 1136 (D.C. Cir. 2004)...................................................................22

*U.S. v. Hunt*,
    05-CR-395, 2006 WL 2613754 (S.D.N.Y. Sept. 6, 2006) ..............................18

*Johnson v. SEC*,
    87 F.3d 484 (D.C. Cir. 1996)......................................................................5, 6

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) .......................................................................17

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997)....................................................................................11

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005)......................15

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ........................................................................22

*In re Marsh & McLennan Companies, Inc. Securities Litigation*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) .....................................................15, 16

*In re Merrill Lynch Ltd. Partnerships Litigation*,
    7 F. Supp. 2d 256 (S.D.N.Y. 1997) ..............................................................11

*Monetta Financial Services, Inc. v. SEC*,
    390 F.3d 952 (7th Cir. 2004) .......................................................................23

*Muller-Paisner v. TIAA*,
    446 F. Supp. 2d 221 (S.D.N.Y. 2006) ......................................................13, 14

*Proffitt v. FDIC*,
    200 F.3d 855 (D.C. Cir. 2000)........................................................................6

*In re Rhodia S.A. Sec. Litig.*,
    531 F. Supp. 2d 527 (S.D.N.Y. 2007) ..................................................1, 17, 18

*Rich v. Maidstone Financial, Inc.*,
    No. 98 Civ. 2569, 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ...................16

*Robbins v. Moore Medical Corp.*,
    894  F. Supp. 661 (S.D.N.Y. 1995) ...............................................................14

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) .........................................................................12

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) ......................................................................13, 14

*SEC v. 800america.com, Inc.*,
    No. 02 Civ. 9046, 2006 WL 3422670 (S.D.N.Y. Nov. 28, 2006).....................24

*SEC v. AbsoluteFuture.com*,
    393 F.3d 94 (2d Cir. 2004) ...........................................................................24

*SEC v. Bolla*,
    550 F. Supp. 2d 54 (D.D.C. 2008)..................................................................25

*SEC v. Boling III*,
    No. 06-1329, 2007 WL 2059744 (D.D.C. July 13, 2007) ................................17

*SEC v. Cavanagh*,
    445 F.3d 105 (2d Cir. 2006) .......................................................................6, 24

*SEC v. Cedric Kushner Promotions, Inc.*,
   417 F. Supp. 2d 326 (S.D.N.Y. 2006) .......................................................................*passim*

*SEC v. Cohen*,
   No. 4:05CV371, 2007 WL 1192438 (E.D. Mo. Apr. 19, 2007).................................15, 23

*SEC v. Collins & Aikman Corp.*,
   524 F. Supp. 2d 477 (S.D.N.Y. 2007) ............................................................................16

*SEC v. Druffner*,
   353 F. Supp. 2d 141 (D. Mass. 2005) .............................................................................11

*SEC v. Durgarian*,
   477 F. Supp. 2d 342 (D. Mass. 2007) .............................................................................16

*SEC v. Gane*,
   No. 03-61553-CIV, 2005 WL 90154 (S.D. Fla. Jan. 4, 2005) ...................................18, 25

*SEC v. Gann*,
   No. 3:05-CV-0063-L, 2008 WL 857633 (Mar. 31, 2008 N.D. Tex. 2008)......................11

*SEC v. Guenthner*,
   395 F. Supp. 2d 835 (D. Neb. 2005) ...............................................................................15

*SEC v. Jones*,
   No. 05 Civ. 7044, 2006 WL 1084276 (S.D.N.Y. Apr. 25, 2006)......................................8

*SEC v. Jones ("Jones II")*,
   476 F. Supp. 2d 374 (S.D.N.Y. 2007) .......................................................................*passim*

*SEC v. KPMG LLP*,
   412 F. Supp. 2d 349 (S.D.N.Y. 2006) ............................................................................15

*SEC v. Manor Nursing Centers, Inc.*,
   458 F.2d 1082 (2d Cir. 1972) .....................................................................................5, 7

*SEC v. Monarch Fund*,
   608 F.2d 938 (2d Cir. 1979) ............................................................................................6

*SEC v. Monarch Funding Corp.*,
   192 F.3d 295 (2d Cir. 1999) ..........................................................................................12

*SEC v. Pasternak*,
   No. 05-3905, 2008 WL 2501355 (D.N.J. June 24, 2008)...........................................14, 15

*SEC v. PIMCO Advisors Fund Mgmt LLC*,
   341 F. Supp. 2d 454 (S.D.N.Y. 2004), *reh'g denied, SEC v. Treadway*,
   354 F. Supp. 2d 311 (S.D.N.Y. 2005) .....................................................................3, 15, 20

*SEC v. Price Waterhouse*,
    797 F. Supp. 1217 (S.D.N.Y. 1992) ........................................................18, 24

*SEC v. Scrushy*,
    No. CV-03-J-615S, 2005 WL 3279894 (N.D. Ala. Nov. 29, 2005)...................................8

*SEC v. Slocum, Gordon & Co.*,
    334 F. Supp. 2d 144 (D.R.I. 2004) ................................................................23

*SEC v. Snyder*,
    No. H-03-04658, 2006 U.S. Dist. LEXIS 81830 (S.D. Tex. Aug. 22, 2006).............24, 25

*SEC v. Steadman*,
    967 F.2d 636 (D.C. Cir. 1992)..............................................................*passim*

*SEC v. Tambone*,
    417 F. Supp. 2d 127 (D. Mass. 2006)......................................................*passim*

*SEC v. Todd*,
    No. 03CV2230, 2007 WL 1574756 (S.D. Cal. May 30, 2007)............................20, 24, 25

*SEC v. Wellshire Secs., Inc.*,
    773 F. Supp. 569 (S.D.N.Y. 1991) ..................................................................24

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ...........................................................................11

*State of New York v. Hendrickson Bros.*,
    840 F.2d 1065 (2d Cir. 1988) .........................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007).............................................................................17, 20

*In re Yukos Oil Co. Securities Litigation*,
    No. 04 Civ. 5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ...................................14

## FEDERAL STATUTES AND REGULATIONS

15 U.S.C. § 78j(b)...........................................................................................1

15 U.S.C. § 77q(a) .........................................................................................1

15 U.S.C. § 78t(e)........................................................................................20

15 U.S.C. § 80a-9(a)(2) ..................................................................................6

15 U.S.C. § 80a-30(b).....................................................................................11

15 U.S.C. § 80b-4 ..........................................................................................11

## FEDERAL STATUTES AND REGULATIONS (Continued)

15 U.S.C. § 80b-6(1)-(2)....................................................................................................1, 20

28 U.S.C. § 2462.............................................................................................................5, 7, 8

17 C.F.R. § 240.10b-5 ...................................................................................................1, 13

## FEDERAL RULES

Fed. R. Civ. P. 9(b) .........................................................................................................8, 12

Fed. R. Civ. P. 12(b)(6)  ......................................................................................................5

## OTHER AUTHORITIES

*Disclosure Regarding Market Timing and Selective Disclosure of Portfolio Holdings*
    SEC Release No. 33-8408 (Apr. 16, 2004), available at
    http://www.sec.gov/rules/final/33-8408.htm. .......................................................3

*SEC Division of Investment Management, April 2001 Letter to the ICI Regarding Valuation
    Issues*, (April 2001), available at
    http://www.sec.gov/divisions/investment/guidance/tyle043001.htm .................................4

*Order Instituting Administrative and Cease-And-Desist Proceedings, Making Findings, and
Imposing Remedial Sanctions and a Cease-and-Desist Order*
    Admin. Proc. File No. 3-13019, April 24, 2008, at 10, available at
    http://www.sec.gov/litigation/admin/2008/ia-2727.pdf........................................6

*Report of the U.S. Government Accountability Office, "Mutual Fund Trading Abuses:  Lessons
Can Be Learned from SEC Not Having Detected Violations at an Earlier State"*
    (April 2005), available at http://www.gao.gov/new.items/d05313.pdf ................................. 10

*SEC Litigation Release No. 18489*
    (Dec. 4, 2003), available at http://www.sec.gov/litigation/ litreleases/lr18489.htm ...........3

*SEC Litigation Release No. 19027*
    (Jan. 10, 2005), available at http://www.sec.gov/ litigation/litreleases/lr19027.htm . ........3

*Testimony of Paul F. Roye, Before the Senate Subcommittee on Financial Management, the
Budget and International Security, Committee on Governmental Affairs*
    (Nov. 3, 2003), available at http://www.sec.gov/news/testimony/ts110303pfroral.htm .....3

Defendant Bruce Alpert, by and through his undersigned counsel, respectfully submits this memorandum in support of his motion to dismiss the complaint dated April 24, 2008 ("Complaint"), filed by the Securities and Exchange Commission (the "SEC"), insofar as the Complaint asserts claims against him.[1]  As discussed below, all of the claims asserted against Alpert should be dismissed.

### Preliminary Statement

After the Office of the New York Attorney General (the "NYAG") announced in September 2003 that it had been conducting a massive investigation of market timing and other trading practices in the mutual fund industry, the SEC commenced its own investigation.  More than four years later, and more than five years after the conduct underlying the Complaint ceased voluntarily, the SEC filed this lawsuit, which primarily involves allegations that between September 1999 and August 2002 one investor was allowed to market time one fund.  With the benefit of hindsight, and notwithstanding the fact that market timing was not and is not illegal, the SEC alleges that Alpert should have stopped one investor from trading sooner than he did and should have disclosed more about market timing than he did, even though there was no legal requirement that he do so.

The SEC belatedly claims that Alpert:  (1) violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder, and Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); and (2) aided and abetted violations of Section 206 of the Investment Advisers Act, 15 U.S.C. §§ 80b-6(1)-(2).  In support of its claims, the SEC alleges that Alpert misrepresented or failed to disclose material facts he had a duty to disclose concerning market timing in

---

[1] Alpert also submits the accompanying declaration of Joshua I. Sherman made July 25, 2008, which annexes certain relevant documents and excerpts thereof referred to herein as "Ex.__."  In deciding a motion to dismiss, the Court is not limited to the face of the complaint, but "may [also] consider … statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007); *see also In re Rhodia S.A. Sec. Litig.,* 531 F. Supp. 2d 527, 543 (S.D.N.Y. 2007) (may consider matters as to which judicial notice may be taken); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 46-48 (2d Cir. 1991) (may consider documents of which plaintiff has notice that are integral to the complaint), *cert. denied,* 503 U.S. 960 (1992); *U.S. v. Dhafir,* 461 F.3d 211, 218 (2d Cir. 2006) (may consider report from federal government's website as a matter of public record).

the Gabelli Global Growth Fund ("GGGF");[2] engaged in a scheme to defraud; and aided and abetted Gabelli Funds, LLC ("Gabelli Funds" or the "Adviser"), in violating the Advisers Act.

As discussed below, most of the SEC's claims for punitive relief are time-barred.  The SEC's claims under Sections 10(b) and 17(a) should be dismissed because the SEC fails to allege with particularity that Alpert misrepresented any material facts, failed to disclose any material facts he had a duty to disclose or engaged in a fraudulent scheme.  The SEC's claims under Sections 10(b) and 17(a)(1) should also be dismissed because the SEC fails to allege with particularity that Alpert acted with scienter.  The SEC fails to state a claim for aiding and abetting violations of Section 206 because it fails to allege that the Adviser violated the Advisers Act or that Alpert knowingly and substantially assisted in any such violation.  Finally, even if the SEC had stated or could state a claim against Alpert, none of the relief the SEC seeks is available in this case.

## Summary Of Factual And Legal Background

According to the SEC, from September 1999 to August 2002, defendant Marc Gabelli, a GGGF portfolio manager, "authorized" Headstart Advisers Ltd. ("Headstart") to market time the GGGF. Compl. ¶¶ 1, 20.  The SEC also alleges that in April 2000, Marc Gabelli "authorized Headstart to significantly increase the amount of money it was using to market time GGGF in exchange for a 'sticky asset' investment in a hedge fund he managed."  *Id*. ¶ 1; *see also id*. ¶ 21.

Market timing encompasses a range of trading styles.  According to the SEC, scalping or time-zone arbitrage is only one form of market timing, one that involves taking advantage of stale pricing caused by time-zone differences in mutual funds that hold international stocks.  *Id*. ¶¶ 15, 17-18.  Another strategy involves frequent trading in and out of a fund.  *Id*. ¶¶ 19, 34.  Although the SEC alleges in the Complaint's Summary that Marc Gabelli "authorized GGGF to be market timed, or 'scalped,'" by

---

[2] Since November 16, 2005, the GGGF has been known as the "GAMCO Global Growth Fund."  Prior to January 13, 2000, the GGGF was called the "Gabelli Global Interactive Couch Potato Fund."  Compl. ¶ 13.

Headstart (*id.* ¶ 1), the *SEC does not allege that Headstart engaged in time-zone arbitrage* or traded in a manner intended to exploit time-zone differences.  To the contrary, the Complaint alleges that Headstart engaged in frequent trading.  *Id.* ¶¶ 3, 35, 40.

Regardless of the type of market timing, it was not and is not illegal.  *See SEC v. PIMCO Advisors Fund Mgmt LLC*, 341 F. Supp. 2d 454, 463, 468-69 (S.D.N.Y. 2004), *reh'g denied*, *SEC v. Treadway*, 354 F. Supp. 2d 311 (S.D.N.Y. 2005); *see also SEC v. Tambone*, 417 F. Supp. 2d 127, 135-36 (D. Mass. 2006).[3]  During the relevant period there was no law requiring disclosure about market timing.  *See* Disclosure Regarding Market Timing and Selective Disclosure of Portfolio Holdings, SEC Release No. 33-8408 (Apr. 16, 2004), available at http://www.sec.gov/rules/final/33-8408.htm.[4]  Also during the relevant period, the prospectuses issued by the GGGF did not mention market timing, let alone prohibit it, or even limit the number of trades that could be made within a particular period.  *See* Prospectuses dated March 9, 2000, May 1, 2001, and May 1, 2002 (Exs. A, B and C).[5]

Nonetheless, Gabelli Funds and Alpert, its Chief Operating Officer ("COO") since 1988 (Compl. ¶ 12), sought to restrict or eliminate market timing by Headstart and others.  Between September 1999 and April 2000, "Alpert informed Najy J. Nasser, the Chief Investment Adviser at Headstart, of the 'ground rules,'" which limited Headstart's trading activity.  *Id.* ¶ 20.  On or about April 1, 2002, "Alpert instructed Headstart to reduce its market-timing activity."  *Id.* ¶ 25.  Then, upon the instructions of Mario Gabelli, the Chief Executive Officer of the Adviser's parent company, on August 7, 2002, Alpert

---

[3] Even the SEC acknowledges that market timing is not illegal.  *See* SEC Litigation Release No. 18489 (Dec. 4, 2003), available at http://www.sec.gov/litigation/ litreleases/lr18489.htm; SEC Litigation Release No. 19027 (Jan. 10, 2005), available at http://www.sec.gov/ litigation/litreleases/lr19027.htm.

[4] *See also* Testimony of Paul F. Roye, Before the Senate Subcommittee on Financial Management, the Budget and International Security, Committee on Governmental Affairs, Nov. 3, 2003, available at http://www.sec.gov/news/testimony/ts110303pfroral.htm (Director of the SEC's Division of Investment Management stated that "disclosure" of market timing policies "is not mandatory").

[5] Given the absence of market timing language in the GGGF prospectuses, this case is distinguishable from certain other cases the SEC has brought to address misrepresentations and omissions regarding market timing.  In those cases, the funds had issued prospectuses that included language prohibiting market timing or limiting the extent to which investors could trade, and the SEC argued that there should have been disclosure about exceptions to those prohibitions.  *See, e.g., PIMCO*, 341 F. Supp. 2d at 459-60, 464; *Tambone*, 417 F. Supp. 2d at 130.

informed Headstart that "it would be permitted no further purchases in GGGF, and that a new account that Headstart had set up would not be allowed to trade in GGGF." *Id.* ¶ 28.

In addition, as the SEC alleges, beginning as early as December 2000, Gabelli Funds excluded market timers other than Headstart from the GGGF. *Id.* ¶¶ 30-31. Alpert instructed two employees of Gabelli Funds to review purchases in the Adviser's global funds and reject those that appeared to constitute market timing. *Id.* ¶ 31. As a result, Gabelli Funds "rejected market-timing purchases in at least twelve mutual funds" and "banned at least 150 accounts prior to August 31, 2002." *Id.* ¶ 35. On its own initiative, Gabelli Funds eliminated market timing entirely more than a year before the NYAG announced its investigation.[6]

Notwithstanding the absence of a legal requirement to disclose market timing, the SEC alleges that Alpert misrepresented and omitted facts concerning Headstart's market timing from a presentation to the Board of Directors of the Global Series Funds, Inc., which includes the GGGF (the "Board"), on February 21, 2001 (Ex. D), and a memorandum dated September 3, 2003 (Ex. E), to the directors of all of the funds in the mutual fund complex for which Gabelli Funds was the adviser, which was then posted on the website of Gabelli Funds' parent. Compl. ¶¶ 4-5. The SEC also alleges that, even though the portfolio manager was the only one who could authorize market timing and was the one who did authorize Headstart's trading (*id.* ¶ 32), Alpert should be held liable for allowing Headstart's trading to continue and approving its continuation. *Id.* ¶¶ 1, 27.

---

[6] Also before that announcement, Alpert sought and obtained approval for implementing a modified fair value pricing procedure using ADRs, a process that limited the ability of investors to profit from time-zone arbitrage. (Ex. D)  (By letter dated April 30, 2001, from Douglas Scheidt, Associate Director and Chief Counsel of the Division of Investment Management (available at http://www.sec.gov/divisions/investment/guidance/tyle043001.htm), the SEC stated that "[f]air value pricing can protect long-term fund investors from short-term investors who seek to take advantage of funds" by exploiting stale pricing of foreign securities; notably, however, the SEC did not require fair value pricing then. ) Alpert also sought and obtained approval to impose a 2% redemption fee on the proceeds of certain share redemptions to discourage investors from engaging in frequent trading. *See* Prospectus dated May 1, 2003 (Ex. F), at 19.

## Argument

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if the factual allegations contained therein do not "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). On a motion to dismiss, the court must "accept as true all [factual] allegations [contained] in the complaint and draw all reasonable inferences in favor of the non-moving party." *Gorman v. Consol. Edison Corp.,* 488 F.3d 586, 591-92 (2d Cir. 2007). Nevertheless, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S. Ct. at 1965.

### I. MOST OF THE SEC's CLAIMS ARE TIME-BARRED AND MUST BE DISMISSED.

Where the face of a complaint shows that an action is time-barred, the action should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. *Domenikos v. Roth*, No. 07-0406-cv, 2008 WL 2329315, at *2 (2d Cir. Jun. 5, 2008); *Francis v. Blaikie Group,* 372 F. Supp. 2d 741, 743 n.2 (S.D.N.Y. 2005), *aff'd,* 177 Fed. Appx. 121 (2d Cir. 2006).

### A.     The SEC's Claims For Punitive Relief Are Subject To A Five-Year Statute Of Limitations.

The SEC seeks a civil fine, injunctive relief and disgorgement. Compl. ¶ 59. Because the relief the SEC seeks is all punitive in nature, the SEC is time-barred from seeking any relief. An action seeking a "civil fine, penalty, or forfeiture, pecuniary or otherwise," is subject to a five-year statute of limitations. *See* 28 U.S.C. § 2462; *see also Johnson v. SEC*, 87 F.3d 484, 486 (D.C. Cir. 1996); *3M Company v. Browner*, 17 F.3d 1453, 1455 (D.C. Cir. 1994). By its terms, Section 2462 applies to the SEC's seeking to impose a civil fine on Alpert. The statute also applies to the SEC's seeking injunctive relief and disgorgement, because in this case that relief is punitive. *See Johnson*, 87 F.3d at 487-92; *SEC v. Jones* ("*Jones II*"), 476 F. Supp. 2d 374, 381, 383-85 (S.D.N.Y. 2007); *see also SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972) (disgorgement of more than amount of illicit proceeds is punitive).

To determine whether injunctive relief is punitive, courts look to the likelihood of recurrence of

violations and the possible collateral consequences of issuing an injunction. The Second Circuit

demands that the SEC "go beyond the mere facts of past violations and demonstrate a realistic likelihood

of recurrence." *SEC v. Monarch Fund*, 608 F.2d 938, 943 (2d Cir. 1979); *see also Proffitt v. FDIC,* 200

F.3d 855, 861-62 (D.C. Cir. 2000). Where years have passed since the alleged misconduct, courts will

not find a likelihood of recurrence. *Monarch Fund*, 608 F.2d at 943; *Johnson,* 87 F.3d at 490 n.9; *Jones*

*II*, 476 F. Supp. 2d at 384-385. Here, there is no allegation that Alpert poses a risk of future harm. Nor

is there any allegation that during Alpert's continued employment by Gabelli Funds as its COO he has

engaged in any violations other than those at issue in the Complaint, which by the SEC's admission

ended no later than September 2003. Given the isolated nature of the alleged violations and the fact that

Alpert himself stopped Headstart's trading almost six years ago, before the NYAG's investigation was

made public, the SEC has not alleged *any* risk of future harm. Courts also look to the practical effect of

the injunction, including how it stigmatizes a defendant and hinders his ability to pursue his vocation.

*Johnson,* 87 F.3d at 488-89; *Jones II*, 476 F. Supp. 2d at 385. Here, an injunction would trigger an

automatic bar on Alpert's continuing in his profession (15 U.S.C. §§ 80a-9(a)(2)), would stigmatize him

and hinder his ability to pursue his vocation. Thus, an injunction against Alpert would be punitive.

    To determine whether disgorgement is punitive, the Court should look to whether the relief

sought here is actually remedial. The primary purpose of disgorgement is to deter future violations by

depriving wrongdoers of ill-gotten gains. *See SEC v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006). As

discussed above, the SEC does not allege facts showing there is a need to deter future violations. Nor

does the SEC allege Alpert was the recipient of any ill-gotten gains. Moreover, in a settlement with the

SEC concerning related charges, Gabelli Funds has already disgorged $9.7 million, the amount by which

Headstart allegedly profited. *See* Order Instituting Administrative and Cease-And-Desist Proceedings,

Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order, Admin. Proc. File

No. 3-13019, April 24, 2008, at 10, available at http://www.sec.gov/litigation/admin/2008/ia-2727.pdf;

Compl. ¶ 39. Because any purported disgorgement by Alpert serves no remedial purpose and would be

duplicative of what Gabelli Funds has paid, disgorgement here would be punitive. *See Manor Nursing Centers, Inc.*, 458 F.2d at 1104.

**B.    Most Of The SEC's Claims Accrued More Than Five Years Ago.**

Section 2462 provides that the limitations period begins to run on "the date when the claim first accrued." 28 U.S.C. § 2462. To determine when an action accrues, courts have looked to when the violation giving rise to the penalty occurred or when the factual and legal prerequisites for filing suit were in place. *See 3M Company*, 17 F.3d at 1460; *Jones II*, 476 F. Supp. 2d at 381.

Acknowledging that it had a statute-of-limitations problem, the SEC asked Alpert to enter into a tolling agreement. He did so voluntarily (Ex. G), thereby extending the limitations period for seven months. Nonetheless, the SEC's claims are still untimely. Taking into account that the SEC filed this action on April 24, 2008, conduct that occurred on or before September 23, 2002 (more than five years and seven months before the SEC commenced this action) cannot form the basis of any claims against Alpert.

The SEC's claims are based primarily on alleged violations that occurred well before September 23, 2002. The SEC's claims based on alleged misrepresentations and omissions arise in part out of a presentation by Alpert to the Board on February 21, 2001. *See* Compl. ¶¶ 4, 36, 38. The SEC's claims based on Alpert's role in Headstart's trading arise out of conduct that took place between September 1999 and August 2002. *See id.* ¶¶ 1, 20, 28.[7] To the extent the SEC claims Alpert aided and abetted the Adviser's violations of Section 206 by misrepresenting and failing to disclose material facts to the Board, the statute began to run when that alleged misrepresentation and omission occurred – on February 21, 2001. To the extent the SEC claims Alpert violated Sections 10(b) and 17(a) and aided and

---

[7] Notwithstanding the SEC's specification of particular dates throughout the Complaint, the SEC does not specify the date Headstart stopped trading in the GGGF. What the Complaint says is that the trading occurred "[f]rom September 1999 **to** September 2002." Compl. ¶¶ 3, 40 (emphasis added). The SEC does not allege the trading continued **through** September 2002, and the SEC clearly knew how to allege that conduct occurred **through** a particular date when it wanted to do so. *See id.* ¶ 3; *see also id.* ¶ 28 (alleging that on August 7, 2002, Alpert informed Headstart that it would be permitted no further purchases and that a new account would not be allowed to trade).

abetted violations of Section 206 by allowing Headstart to market time the GGGF, the statute began to run when that conduct occurred – beginning in September 1999 and ending no later than August 2002. Thus, the SEC's claims based upon the foregoing are time-barred.

## C.  The Statute Of Limitations Cannot Be Tolled.

The statute of limitations imposed by Section 2462 cannot be tolled until the government discovers the bases for its claims.  The discovery rule does not apply.  *See 3M Company*, 17 F.3d at 1460-62; *SEC v. Jones*, No. 05 Civ. 7044, 2006 WL 1084276, at *6 (S.D.N.Y. Apr. 25, 2006) (abrogated by *Jones II*, 476 F. Supp. 2d 374); *Jones II*, 476 F. Supp. 2d at 381; *SEC v. Scrushy*, No. CV-03-J-615S, 2005 WL 3279894, at *2-3 (N.D. Ala. Nov. 29, 2005).

Nor may the statute be tolled.  To toll the statute, a plaintiff is required to allege that:  (1) defendant wrongfully concealed material facts regarding his wrongdoing, (2) the concealment prevented plaintiff's discovery of the nature of its claims within the statutory period, *and* (3) plaintiff acted with diligence in the discovery of its claims.  *See Corcoran v. New York Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999); *Jones II*, 476 F. Supp. 2d. at 382.[8]

### 1.  No Allegations Of Wrongful Concealment

To plead wrongful concealment, the SEC must allege either that:  (1) Alpert took affirmative steps to prevent or frustrate discovery of the wrongdoing by depriving the SEC of the information it needed to bring its claims timely; or (2) the alleged wrong itself was self-concealing.  *Jones II*, 476 F. Supp. 2d at 381; *see also Finkelman v. New York State Police*, No. 06 Civ. 8705, 2008 WL 821833, at *4 (S.D.N.Y. Mar. 26, 2008); *Daly v. United Ass'n of Plumbers and Pipefitters of U.S. and Canada*, No. 96 Civ. 9060, 1997 WL 566186, at *4 (S.D.N.Y. Sept. 11, 1997); *Butala v. Agashiwala*, 916 F. Supp. 314, 319-21 (S.D.N.Y. 1996).

---

[8] The SEC must also plead fraudulent concealment with particularity as required by Rule 9(b).  A*bercrombie v. Andrew College*, 438 F. Supp. 2d 243, 266-67 (S.D.N.Y. 2006); Fed. R. Civ. P. 9(b).

The SEC fails to plead that Alpert took affirmative steps to hide the alleged wrongdoing.  *See* Compl. ¶¶ 46-47.  First, the SEC's allegations that Alpert misrepresented and omitted facts from his statements to the Board in February 2001 cannot be used to plead he affirmatively concealed those alleged misrepresentations and omissions.  Fraudulent concealment does not apply when the alleged act of concealment is the same as the alleged wrongdoing.  *See Abercrombie*, 438 F. Supp. 2d at 255-66.  Moreover, the SEC's allegations relating to the February 2001 board presentation do not show affirmative concealment of any alleged wrongdoing because the presentation included an explanation "that Market Timers have been using the Fund."  *See* Ex. D, at 17.  Second, the SEC's allegations that Alpert directed the "market-timing police" not to monitor Headstart's trading cannot be used to plead concealment because the SEC fails to allege with particularity when or how that direction was given or why it was fraudulent.  Even if the SEC had made such allegations, a direction not to monitor Headstart's trading would not have concealed any misrepresentations or trading.  Third, the SEC's allegations relating to the September 2003 memorandum do not show affirmative concealment because the memorandum itself disclosed that Gabelli Funds "did not completely eliminate all timers."  Compl. ¶44.

The SEC also fails to plead why the alleged wrongs were self-concealing or unknowable.[9]  The Complaint simply includes a conclusory allegation that the SEC could not have discovered the bases for its claims before late 2003, "because of the self-concealing nature of Defendants' wrongdoing."  *See id*. ¶ 46.  That is not enough to demonstrate the alleged wrongdoing was unknowable, particularly where, as here, there is no allegation the board presentation, the alleged market-timing arrangement or the trading was hidden or secret.  *See Jones II*, 476 F. Supp. 2d at 382-83.

In fact, the trading was affirmatively disclosed within Gabelli Funds, and to the Board and the

---

[9] *Contra State of New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083-84 (2d Cir. 1988) (bid rigging is thought to be self-concealing, because it purports to be a product of genuine competition and is kept secret over time).

SEC.  First, the SEC alleges that information about Headstart's trading was available.  Compl. ¶ 42.

Indeed, it was recorded in the GGGF's books and records.  Second, the Minutes indicate that the Board

was presented with information regarding shareholder subscription and redemption levels, which the

SEC believes can be an indicator of market timing.  *See* Ex. D, at 17-18.[10]  Third, as shown below, data

reflecting sales and redemptions in the GGGF, which was reported in the GGGF annual reports filed

with the SEC for the years 1995 through 2002, revealed a dramatic increase in trading within the fund

during the relevant period:



*See* Gabelli Global Growth Fund Annual Reports dated December 31, 1995, 1996, 1997, 1998, 1999,

2000, 2001 and 2002 (Exs. H, I, J, K, L, M, N and O).[11]  The GGGF annual reports plainly disclosed

that more than twice as many GGGF shares were sold in 1999 than were sold the year before.  The

annual reports also disclosed that, in the years 2000, 2001 and 2002, when the bulk of Headstart's trades

allegedly occurred, trading in the GGGF was at levels six, nine and eight times that which had occurred

in 1998.  Because all of this information was readily available in the GGGF annual reports, to which the

SEC clearly had access, the SEC cannot allege the basis of its claims was self-concealing or

unknowable.  Moreover, the SEC could easily have exercised its broad examination powers to review

---

[10]  *See* Report of the U.S. Government Accountability Office, "Mutual Fund Trading Abuses:  Lessons Can Be Learned from SEC Not Having Detected Violations at an Earlier State," April 2005 (available at http://www.gao.gov/new.items/d05313.pdf), at 23 (discussing fact that the SEC staff, in connection with examinations of mutual funds, now instruct examiners to review "fund sales and redemption (shareholder turnover) data to detect patterns of market timing").

[11]  Note that, in 2000, all GGGF shares became Class AAA shares.

and inquire about the board presentation and the trading. *See Jones II*, 476 F. Supp. 2d at 382-83 (citing 15 U.S.C. §§ 80b-4, 80a-30(b)).

### 2.    No Allegations That Concealment Prevented Discovery

As discussed above, there is no allegation that the board presentation, alleged market-timing arrangement or trading was hidden; and the trading at issue was affirmatively disclosed to the SEC.[12] The Complaint fails to allege how under these circumstances the SEC was prevented from discovering the basis for its claims against Alpert, especially given its broad examination powers.

### 3.    No Allegations Of Diligence

Even if the SEC had alleged wrongful concealment and that such concealment prevented the SEC's discovery of the nature of its claims, the SEC fails entirely to allege it "exercised due diligence in trying to discover the fraud." *In re Merrill Lynch Ltd. Partnerships Litigation*,  7 F. Supp. 2d 256, 274 (S.D.N.Y. 1997); *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997).  Despite the SEC's right to conduct examinations of mutual fund complexes, the SEC did nothing whatsoever to discover the basis of its claims until *after* the trading had been stopped by the Adviser more than a year before the NYAG's market-timing investigation was made public. *See Fitzgerald v. Citigroup, Inc.*, No. 03 Civ. 4305, 2007 WL 582965, at *8 (S.D.N.Y. Feb. 23, 2007) (declining to toll limitations period where diligence in discovering claim was not alleged).

### II.  TO THE EXTENT THE SEC'S CLAIMS ARE NOT TIME-BARRED, THEY ARE NONETHELESS DEFICIENT AND MUST BE DISMISSED.

The SEC seeks to allege fraud by hindsight, which is not permitted.[13]  After the NYAG had announced its massive investigation of market timing, and after the SEC and others had concluded that

---

[12] This case is distinguishable from other market-timing cases involving deceptive market-timing arrangements that include disguising practices by using different account numbers, registered representatives and account names.  *See, e.g., SEC v. Gann*, No. 3:05-CV-0063-L, 2008 WL 857633 (N.D. Tex. Mar. 31, 2008); *SEC v. Druffner*, 353 F. Supp. 2d 141, 146 (D. Mass. 2005).

[13] *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1129 (2d Cir. 1994); *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).

mutual fund advisers should disclose more and do more about market timing, the SEC alleges that years before Alpert should have disclosed more, known more and done more.  The SEC fails, however, to allege with particularity that Alpert violated Sections 10(b) or 17(a) and fails to state a claim that Alpert aided and abetted any violation by the Adviser of Section 206.

## A.     The SEC Does Not Allege A Violation Of Section 10(b) Or 17(a) With Particularity.

To state a claim that Alpert violated Section 10(b) and Rule 10b-5, the SEC must allege that Alpert: (1) made a material misrepresentation, omitted a material fact that he had a duty to disclose, or used a fraudulent or manipulative device; (2) with scienter; (3) in connection with the purchase or sale of securities.  *See SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999).  Essentially the same elements are required under Section 17(a), though no allegation of scienter is required to plead a claim under subsections (2) or (3).  *Id.*

Pursuant to Rule 9(b), the SEC is required to allege fraud with particularity.  Fed. R. Civ. P. 9(b).  The SEC must, among other things, explain why any alleged misrepresentations or omissions were fraudulent.  *See Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004).  "Allegations that are conclusory or unsupported by factual assertions are insufficient."  *ATSI Commc'ns,* 493 F.3d at 99.

### 1.     The SEC Fails To Allege With Particularity That Alpert Misrepresented Any Material Facts Or Omitted To State Any Such Facts He Had A Duty To Disclose.

To avoid fatal statute of limitations problems, the SEC alleges Alpert made misrepresentations in and omitted facts from the September 2003 memorandum.

#### a)     The SEC Does Not Allege A Misrepresentation With Particularity.

The SEC alleges that the September 2003 memorandum "created the false impression" the Adviser "was attempting to identify and ban *all* scalpers and frequent traders."  Compl. ¶ 44 (emphasis added).  However, the SEC itself acknowledges that the memorandum stated the Adviser's procedures "did not completely eliminate all timers."  *Id.*  Similarly, although the SEC alleges that the memorandum was misleading in stating that "scalpers had been restricted for more than two years," the

SEC acknowledges that scalpers had in fact been restricted for more than two years. *Id.* ¶¶ 30-31, 35. In addition, although the SEC alleges that the memorandum gave the misleading impression that any failure to exclude market timers was the result of procedural limitations, the SEC itself alleges that the Adviser's failure to exclude Headstart was a function of procedural limitations. *Id.* ¶¶ 30-31, 35. Thus, the SEC has failed to allege with particularity that any statement was false. *Muller-Paisner v. TIAA*, 446 F. Supp. 2d 221, 227-29 (S.D.N.Y. 2006) (Batts, J.).

> **b)    The SEC Does Not Allege An Actionable Omission With Particularity.**

To state a claim under Section 10(b) or 17(a) based upon omissions, the SEC must allege with particularity that there was a duty to disclose those facts. *See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 809-12 (2d Cir. 1996). A duty to disclose arises if disclosure is required by law or if it is necessary to prevent a statement from being misleading. *See Glazer v. Formica Corp.*, 964 F.2d 149, 156-57 (2d Cir. 1992); *see also* 17 C.F.R. § 240.10b-5.

The SEC does not allege that Alpert was required by law to disclose any facts regarding market timing. Nor could the SEC make such an allegation because during the relevant period there was no law requiring disclosure of market timing. In the absence of a law requiring disclosure, the SEC must allege that disclosure was necessary to prevent a statement made from being misleading. However, also as discussed above, the SEC fails to allege that any statement made was misleading.

Even if the SEC had alleged that any of the statements at issue was misleading, the SEC still fails to allege with particularity that any omission was fraudulent. Although the SEC alleges that Alpert failed to disclose in the September 2003 memorandum that Headstart was permitted to market time the GGGF, that there was a market-timing arrangement with Headstart and that Headstart's trading was detrimental to the GGGF shareholders, the memorandum did not call for such disclosure. The memorandum concerned scalping or time-zone arbitrage, which, as discussed above, is a form of market timing different from frequent trading. *See* Ex. E. Because the SEC acknowledges that the memorandum concerned scalping or time-zone arbitrage (*see* Compl. ¶ 44) and that Headstart was

engaged in frequent trading, not scalping or time-zone arbitrage (*see id.* ¶¶ 3, 35, 40), the SEC fails to allege the memorandum was misleading by omitting facts about Headstart's trading.  *See San Leandro*, 75 F.3d at 809-12; *Glazer*, 964 F.2d at 155-57; *see also Muller-Paisner*, 446 F. Supp. 2d at 229; *SEC v. Pasternak*, No. 05-3905, 2008 WL 2501355, at *50 (D.N.J. June 24, 2008); *Robbins v. Moore Medical Corp.*, 894 F. Supp. 661, 668-75 (S.D.N.Y. 1995).

c)      **The SEC Fails To Allege A Material Misrepresentation Or Omission.**

Even if the SEC had pled a misrepresentation or omission with the requisite particularity, the SEC has failed to allege that any such misrepresentation or omission was material.  It is well established that a disclosure must be *materially* misleading to be actionable.  *See San Leandro*, 75 F.3d at 809-12; *Robbins*, 894 F. Supp. at 669-74.  A plaintiff satisfies the materiality requirement by alleging a representation or omission that a reasonable investor would have considered significant in making investment decisions, so that when viewed "in the light of the circumstances under which [it] w[as] made," it would affect the "total mix" of information available to the investor.  *In re Yukos Oil Co. Securities Litigation*,  No. 04 Civ. 5243, 2006 WL 3026024, at *13 (S.D.N.Y. Oct. 25, 2006).

Disclosure of the facts the SEC alleges were misrepresented or wrongfully omitted from the September 2003 memorandum would not have altered the total mix of information available to the GGGF shareholders.  As discussed above, the memorandum was addressed to the fund directors.  It was clearly intended to provide an immediate summary of the NYAG's newly-announced investigation of market timing and to summarize certain facts concerning the Adviser's approach to time-zone arbitrage or scalping, not other types of market timing.  *See* Ex. E.  Moreover, the memorandum expressly stated that all market timers had not been eliminated from the funds, and that the Adviser had sought to discourage, not eliminate, market timing.  *Id.*  In addition, in the GGGF Annual Reports, the shareholders had available to them information about redemption levels and sales that the SEC believes could have alerted them to the possibility of market timing.  *See* Exs. H, I, J, K, L, M, and O.  In light of

the foregoing, a reasonable investor would not have considered significant facts about Headstart's market timing in the GGGF, which the Adviser had stopped more than a year earlier.

Because the SEC fails to allege a material misrepresentation or omission with the requisite particularity, the SEC's disclosure-based claims that Alpert violated Sections 10(b) and 17(a) must be dismissed. *See SEC v. Cohen*, No. 4:05CV371, 2007 WL 1192438, at *15 (E.D. Mo. Apr. 19, 2007); *SEC v. Guenthner*, 395 F. Supp. 2d 835, 847-48 (D. Neb. 2005).

## 2.    The SEC Fails To Allege With Particularity That Alpert Participated In Any Scheme.

The SEC alleges generally that Alpert engaged in a scheme to defraud by "employ[ing] devices, schemes or artifices to defraud" and engaging in conduct "which operated or would have operated as a fraud or deceit." Compl. ¶¶ 49, 52, 55. In support of its claims, the SEC alleges that, after Marc Gabelli "authorized" Headstart to market time the GGGF, Alpert "allowed" Headstart to market time the GGGF and "approved the continuation" of Headstart's market timing, even after he learned that Marc Gabelli had allegedly entered into a market-timing arrangement with Headstart. *Id.* ¶¶ 1, 2, 20-21, 27, 38.[14] The SEC's claim fails for three reasons.

As discussed in the memorandum in support of Marc Gabelli's motion to dismiss, the SEC fails to allege facts showing that there was any market-timing arrangement. Even if there were a market-timing arrangement, the SEC fails to allege a scheme because it is well established that market timing and market-timing arrangements, standing alone, are not *per se* fraudulent devices. *PIMCO*, 341 F. Supp. 2d at 468; *Tambone*, 417 F. Supp. 2d at 136. Nor are Headstart's alleged profits, by themselves, indicative of any fraud. *See Pasternak*, 2008 WL 2501355, at *41.

---

[14] Allegations that Alpert made misleading statements or failed to disclose certain facts are insufficient to state a claim for scheme liability. *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 177 (2d Cir. 2005)*; In re Marsh & McLennan Companies, Inc. Securities Litigation*, 501 F. Supp. 2d 452, 490-91 (S.D.N.Y. 2006); *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 377-78 (S.D.N.Y. 2006).

Moreover, even if the sort of market timing or market-timing arrangement alleged here could be viewed as a scheme, the Complaint lacks particularized allegations of Alpert's active participation in the alleged scheme or allegations that his participation involved actions that were "independently deceptive or fraudulent." *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 486 (S.D.N.Y. 2007).  At most, the SEC alleges that Alpert allowed Headstart to engage in market timing after Marc Gabelli had authorized it and that Alpert allowed it to continue after he had learned of the alleged market-timing arrangement.  However, allegations that a defendant "helped perpetuate" a scheme are not sufficient. *See In re Marsh & McLennan Companies, Inc. Securities Litigation*, 501 F. Supp. 2d at 491.  The allegations are also deficient because they fail to show how Alpert's "actions had a principal purpose and effect upon creating a false appearance in fact in furtherance of the scheme to defraud."  *See SEC v. Durgarian*, 477 F. Supp. 2d 342, 352-53 (D. Mass. 2007).  In light of the foregoing, the SEC's scheme-based claims against Alpert under Sections 10(b) and 17(a) fail.  *See Rich v. Maidstone Financial, Inc.*, No. 98 Civ. 2569, 2002 WL 31867724, at *10 (S.D.N.Y. Dec. 20, 2002).

### 3.    The SEC Fails To Allege With Particularity That Alpert Acted With The Requisite Intent.

To plead scienter, which is an element of a claim under Sections 10(b) and 17(a)(1), the SEC must allege that a defendant acted with "intent to deceive, manipulate, or defraud." *Aaron v. SEC*, 446 U.S. 680, 690-96 (1980); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-214 (1976).  In particular, the SEC must "provide some factual basis for conclusory allegations of intent" and those allegations "must give rise to a 'strong inference' that [a defendant] possessed the requisite fraudulent intent." *Beck v. Mfrs. Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir. 1987) (citations omitted), *overruled on other grounds, United States v. Indelicato,* 865 F.2d 1370 (2d Cir. 1989); *see also Collins & Aikman Corp*., 524 F. Supp. 2d at 487-88; *Durgarian*, 477 F. Supp. 2d at 353.

To satisfy the "strong inference" requirement, a plaintiff must plead either (1) that the defendant had both a motive and opportunity to commit the fraud; or (2) strong circumstantial evidence of

conscious misbehavior or recklessness, which is "'at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or was so obvious that the defendant must have been aware of it.'" *Kalnit v. Eichler*, 264 F.3d 131, 138-39, 142 (2d Cir. 2001) (citations omitted).  Moreover, the SEC must plead an inference of scienter, taking into account all opposing inferences, that is at least as compelling as any opposing inference one could draw from the allegations as a whole.  *See SEC v. Boling III*, No. 06-1329, 2007 WL 2059744, at *4 n.1 (D.D.C. July 13, 2007) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499, 2508-10 (2007)).

The SEC does *not* allege Alpert had any motive to commit fraud.  Nor does the SEC allege any facts from which it could be inferred that Alpert had any reason to make misleading statements in the September 2003 memorandum or to permit trading he believed was harmful.  Because the SEC does not allege Alpert had a motive to defraud, "the strength of the circumstantial allegations must be correspondingly greater."  *Kalnit*, 264 F.3d at 142 (citation omitted).

The SEC alleges that Alpert "knew, or was reckless in not knowing, that the statements contained in the [September 2003 memorandum] were materially misleading."  Compl. ¶ 45.  However, the SEC alleges no facts showing Alpert "knew" the September 2003 memorandum was misleading.  To allege conscious misbehavior or recklessness, the plaintiff must plead that "defendant[] had knowledge of specific facts or documents that [he] disregarded."  *In re Rhodia S.A. Securities Litigation*, 531 F. Supp. 2d at 548-50.  The SEC does not meet this standard.

When Alpert wrote the September 2003 memorandum, market timing was not illegal, the SEC did not require disclosure regarding market-timing risks and the GGGF prospectuses had not mentioned market timing.  Moreover, the memorandum addressed time-zone arbitrage, not frequent trading.  Under these circumstances, reasonable minds could certainly differ about whether Alpert had a duty to disclose more about market timing than he did disclose.  Thus, the SEC fails to plead Alpert acted recklessly in failing to disclose.  *See Kalnit,* 264 F.3d at 143-44; *see also In re Rhodia S.A. Securities Litigation*, 531

F. Supp. 2d at 548-50; *SEC v. Steadman*, 967 F.2d 636, 641-43 (D.C. Cir. 1992); *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240-41 (S.D.N.Y. 1992); *SEC v. Gane*, No. 03-61553-CIV, 2005 WL 90154, at *15 (S.D. Fla. Jan. 4, 2005).[15]

The SEC alleges that Alpert "knew that Headstart was frequently trading in GGGF and allowed it to continue." Compl. ¶ 1. The SEC does not allege how Alpert knew about the frequency of Headstart's trading. However, even if the SEC had alleged how Alpert knew about the frequency of Headstart's trading, the SEC does not allege why he knew or should have known that the trading should not have been allowed to continue. There was no law or other prohibition on frequent trading.

Finally, the SEC alleges that, by approving Headstart's market timing, Alpert "knowingly or recklessly caused substantial harm to the Fund" and "knew, or [was] reckless in not knowing, that GGGF was being harmed." *Id*. ¶¶ 2, 42. The SEC fails to allege how Alpert knew or why he should have known that by approving Headstart's trading the GGGF would be harmed. The SEC does not allege that Headstart informed Alpert it planned to engage in time-zone arbitrage or scalping. Nor does the SEC allege that the portfolio manager responsible for the GGGF raised any concern that Headstart's trading was disruptive to the management of the GGGF. To the contrary, the SEC alleges that the portfolio manager authorized the trading and allowed the amount traded to be increased.

The SEC apparently believes that an inference of scienter can be drawn from the fact that in July 2001, Alpert "redeemed his personal holdings in GGGF, after telling a Gabelli officer that he intended to do so because Marc Gabelli was allowing GGGF to be scalped." *See id*. ¶ 42. This allegation is not pled with the requisite particularity because it fails to state who Alpert spoke to or when he did so. In addition, the SEC does not allege that Alpert said the portfolio manager was allowing the GGGF to be

---

[15] To the extent the SEC alleges that Alpert should have disclosed that he or the Adviser had violated the securities laws by allowing Headstart to market time the GGGF, the SEC also fails to plead scienter. *See U.S. v. Hunt*, 05-CR-395, 2006 WL 2613754, at *7 (S.D.N.Y. Sept. 6, 2006) (noting that Government's theory that defendant committed fraud by not disclosing his wrongdoing to the public was "puzzlingly circular" and rejecting theory).

scalped by Headstart.  Even if the SEC had made such an allegation with particularity, it would not permit an inference of scienter.  If Alpert had believed that throughout the period during which Headstart traded the GGGF was being harmed, he would not have waited until July 2001 to redeem his stock – he would have redeemed earlier.  Similarly, if Alpert had been concerned about the GGGF's being harmed, he would not have waited until after he had redeemed his stock to reduce and eliminate Headstart's trading – he would have taken action prior to having redeemed.  Thus, the SEC's reliance upon Alpert's redemption of stock does not support a rational, let alone strong, inference of scienter. *See Atlantic Gypsum Co. v. Lloyds International Corp.,* 753 F. Supp. 505, 514 (S.D.N.Y. 1990).

The SEC also apparently believes that an inference of scienter can be drawn from Alpert's email of April 1, 2002.  *See* Compl. ¶ 25.  That position also fails to permit a rational or strong inference of scienter.  Although the email indicates that Alpert was opposed to market timing, it does not permit a strong inference that Alpert believed Headstart was harming the GGGF; and it does not show that Alpert allowed Headstart to continue any such activity.  *See id.*  To the contrary, on or around the date of the email, Alpert "instructed Headstart to reduce its market-timing activity."  *Id.*  Soon thereafter, Alpert eliminated Headstart from trading in the GGGF.  *Id.* ¶ 28.

Any inference of scienter that might be drawn is outweighed by contrary inferences.  As discussed above, the SEC alleges that Alpert rejected and banned numerous market timers; and he also sought and obtained board approval to implement a modified fair value pricing procedure using ADRs and to impose a 2% redemption fee on the proceeds of certain redemptions.  In addition, it is noteworthy that the GGGF had net assets of almost $448 million at the end of 1999 (Ex. L).  Thus, Headstart's trading of $5 to $7 million (Compl. ¶ 20) could not reasonably have been expected to have raised any concerns.  Further, given that in 1999 approximately 43% of the GGGF was invested in domestic securities, with the balance divided among four other geographic areas (Ex. L), Alpert could not reasonably have been alerted to the possibility that Headstart might be engaged in time-zone arbitrage or scalping, which was the sort of trading about which he had expressed concern.   Simply because

Headstart profited from its trades does not mean Alpert knew or should have known that Headstart was engaged in wrongdoing. *See Chill v. General Electric Co.*, 101 F.3d 263, 269-71 (2d Cir. 1996); *SEC v. Todd*, No. 03CV2230, 2007 WL 1574756, at * 11 (S.D. Cal. May 30, 2007). In light of the foregoing, the SEC fails to allege facts allowing an inference of scienter as cogent and at least as compelling as any opposing inference one could draw from the entirety of the facts alleged and that the Court may consider. *See Tellabs, Inc.*, 127 S. Ct. at 2510.

**B.      The SEC Does Not Allege Alpert Aided And Abetted A Violation Of The Adviser's Act.**

To plead claims against Alpert for aiding and abetting violations of Sections 206(1) and 206(2) of the Advisers Act, the SEC must plead primary violations of Section 206 by Gabelli Funds, that Alpert had knowledge of the Adviser's violations, and that Alpert provided substantial assistance to the Adviser. *See* 15 U.S.C. § 78t(e)*; SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006). The SEC fails to satisfy those pleading requirements.

To allege a primary violation under Section 206(1), the SEC must plead that the Adviser employed a "device, scheme, or artifice to defraud" a client or prospective client and that the Adviser acted with scienter. To state a claim under Section 206(2), the SEC must allege that the Adviser engaged in a "transaction, practice, or course of business which operate[d] as a fraud or deceit upon [a] client or prospective client." *See* 15 U.S.C. §§ 80b-6(1) & (2). The pleading requirements for Sections 206(1) and (2) are essentially the same as the elements for Sections 10(b) and 17(a), except that for claims under 206(1) the SEC must allege intent, while for claims under 206(2), allegations of negligence suffice. *See PIMCO*, 341 F. Supp. 2d at 470; *Steadman*, 967 F.2d at 641-43.

To satisfy its burden to allege a primary violation, the SEC appears to rely on allegations concerning the conduct of Alpert and Marc Gabelli that the SEC seeks to attribute to the Adviser. For the reasons discussed in the memorandum submitted by Marc Gabelli in support of his motion to dismiss, the SEC fails to allege with particularity that he engaged in any conduct that would support a violation of Section 206. For the reasons discussed above, the SEC fails to allege with particularity that

Alpert engaged in any conduct in connection with the September 2003 memorandum or Headstart's trading that would support such a violation.

In addition to basing its claim for aiding and abetting violations of Section 206 on the conduct of Marc Gabelli and on Alpert's alleged misleading statements in the September 2003 memorandum and allowance of trading, the SEC appears to base its claims on allegations that Alpert misrepresented facts in and omitted facts from his presentation to the Board on February 21, 2001. Compl. ¶¶ 36, 38.

However, the SEC fails to allege with particularity that, in the February 2001 board presentation, Alpert made any misleading statements about market timing or scalping, the harm of such trading to the GGGF or the efforts Gabelli Funds was undertaking to combat it. In fact, at the board meeting, Alpert "explained that Market Timers have been using the [Global Funds, including the GGGF] in a way that is disruptive to the Fund[s] and management of the Fund[s'] portfolio." Minutes of Regular Meeting of Board of Directors dated February 21, 2001 ("Minutes") (Ex. D), at 17; *see also* Compl. ¶ 36. The SEC also acknowledges that Alpert's statements were true insofar as the SEC alleges the Adviser and Alpert in fact made efforts to combat market timing. *Id.* ¶¶ 31, 34-35; *see also* Ex. D, at 18 (noting that Alpert sought and obtained the Board's approval for ADR pricing to reduce the ability of investors to engage in time-zone arbitrage in the GGGF).[16]

Although the SEC alleges Alpert failed to disclose certain facts in the board presentation, it did not call for such disclosure. Like the September 2003 memorandum, the presentation concerned scalping or time-zone arbitrage, not frequent trading, which is the sort of trading in which the SEC alleges Headstart was engaged. *See* Ex. D, at 17-18. The SEC concedes as much alleging that Alpert used terms in the board presentation similar to those used in his December 2000 memorandum, which clearly concerned market timing in the form of time-zone arbitrage or scalping. Compl. ¶¶ 36, 31; *see*

---

[16] In addition, as discussed above, the Minutes indicate the Board was informed about shareholder redemption levels, which, according to the SEC, would have alerted the directors to the possibility of market timing or frequent trading. *See* Ex. D, at 18.

*also* Memorandum from Bruce N. Alpert to Caesar M.P. Bryan, December 15, 2000 (Ex. P). Thus, it was not necessary for Alpert to disclose information about Headstart's trading during the presentation. Moreover, since the SEC does not allege that Alpert became aware of the alleged market-timing arrangement before April 1, 2002 (Compl. ¶ 25), he could not have disclosed information about that arrangement in February 2001.

Even if the SEC had alleged Alpert made misleading statements in the board presentation, the SEC fails to allege that he did so with wrongful intent or negligently. As discussed above, because there was no legal requirement to disclose market timing or market-timing arrangements, no prohibition on market timing or market-timing arrangements and no knowledge on the part of Alpert that Headstart's trading was harming the GGGF, the SEC fails to allege that Alpert's failure to disclose information about Headstart's trading or the market-timing arrangement was an intentional, reckless or even negligent violation of law. Moreover, to the extent the SEC argues that a culpable mental state can be inferred from Alpert's redemption of stock in July 2001 or email dated April 1, 2002, that argument fails for the reasons discussed above, and because the redemption and email significantly post-dated the board presentation.

In addition to failing to allege a primary violation of Section 206, the SEC fails to allege that Alpert had knowledge of any violation of Section 206. To satisfy this element, the SEC must plead with particularity that Alpert engaged in "knowing misconduct." *Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d at 334-35; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006); *Howard v. SEC*, 376 F.3d 1136, 1142 (D.C. Cir. 2004); *Tambone*, 417 F. Supp. 2d at 136-37. The SEC fails to meet that standard, or even a lower standard that would only require the SEC to plead that Alpert was generally aware that his actions were part of an overall course of conduct that was improper or illegal. *See Steadman*, 967 F.2d at 647. Although the SEC alleges generally that Alpert knew or was reckless in not knowing that the September 2003 memorandum and board presentation were misleading and that Headstart was harming the GGGF, the SEC does not and cannot allege that there was any law or other

legal requirement that obligated him or the Adviser to disclose facts about or prevent market timing or market-timing arrangements.  Nor does the SEC allege facts showing that Alpert had any knowledge that Headstart was harming the GGGF.  Thus, the SEC fails to plead Alpert had actual knowledge, or even general awareness, that any of the alleged wrongdoing constituted a violation of Section 206.  *See Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d at 334-36; *Monetta Financial Services, Inc. v. SEC*, 390 F.3d 952, 956-57 (7th Cir. 2004); *Cohen*, 2007 WL 1192438, at *19; *SEC v. Slocum, Gordon & Co.,* 334 F. Supp. 2d 144, 184-85 (D.R.I. 2004).

The SEC also fails to plead that Alpert provided substantial assistance to the Adviser.  To the extent the SEC relies upon Alpert's alleged failures to disclose or failure to stop Headstart's market timing, those allegations are insufficient because where the SEC alleges a defendant aided and abetted by being silent or failing to act, the SEC must also allege that the defendant "recklessly violate[d] an independent duty to act or manifest[] a conscious intention to further the principal violation."  *Tambone*, 417 F. Supp. 2d at 136; *see also Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983).  In determining whether the SEC has met that standard, the Court must ascertain whether the SEC has alleged Alpert "threw in his lot" with the primary violator and benefited from his silence or inaction.  *See Tambone*, 417 F. Supp. 2d at 137 (citing *Austin v. Bradley, Barry & Tarlow, P.C.*,  836 F. Supp. 36, 39-40 (D. Mass. 1993)).  The SEC fails to allege a duty to disclose or act as to Headstart's trading.  Even if the SEC had, it fails to allege Alpert benefited from any silence or inaction.

In any event, whether the SEC bases its claim upon silence, inaction, awareness or approval, the SEC must allege that Alpert's purported substantial assistance was the proximate cause, and not just a "but-for" cause, of the primary violation.  *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62-63 (2d Cir. 1985); *Armstrong*, 699 F.2d at 92.  The SEC does not and cannot satisfy this pleading requirement.  First, as discussed above, the SEC alleges it was the portfolio manager – not Alpert – who "authorized" Headstart's market timing, and "agreed to permit Headstart to increase its timing capacity to $20 million … in exchange for a $1 million investment by Headstart in a hedge fund

[he] also managed." Compl. ¶¶ 20, 21, 32. Second, the SEC alleges that Alpert only played a passive role in the primary violation. In particular, the SEC alleges that Alpert "*allowed[market timing] to continue*" after Marc Gabelli had authorized it, "*approved the continuation* of Headstart's timing" after Headstart had invested in Marc Gabelli's hedge fund, and "*continued to allow* Headstart to market time GGGF." *Id*. ¶¶ 1, 27 (emphases added). These allegations fail to plead Alpert was the proximate cause of any violation. *See Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d at 335-36.

### III. THE REMEDIES SOUGHT BY THE SEC ARE UNAVAILABLE.

Even if most of the SEC's requests for relief were not time-barred, and even if the SEC had stated claims upon which relief could be granted, the remedies the SEC seeks are unavailable.

To obtain an injunction against substantive violations that have scienter as an element -- Sections 10(b) and 17(a)(1), and aiding and abetting violations of Section 206(1) -- the SEC must allege that Alpert acted with scienter. *See Aaron*, 446 U.S. at 701; *SEC v. Wellshire Secs., Inc.,* 773 F. Supp. 569, 574-76 (S.D.N.Y. 1991); *Steadman*, 967 F.2d at 647-48. Because the SEC has not alleged Alpert acted with scienter, the SEC is not entitled to an injunction in respect of those claims. Even if the SEC had alleged scienter, or for claims that do not require scienter, the SEC would still not be entitled to injunctive relief, because, as discussed above, the SEC is required to allege but has not alleged that Alpert poses a risk of future violation, or that a future violation is reasonably likely. *See Aaron*, 446 U.S. at 701; *Steadman*, 967 F.2d at 647-48; *Todd*, 2007 WL 1574756, at *17; *SEC v. 800america.com, Inc.*, No. 02 Civ. 9046, 2006 WL 3422670, at *11 (S.D.N.Y. Nov. 28, 2006); *SEC v. Snyder*, No. H-03-04658, 2006 U.S. Dist. LEXIS 81830, at *4-17 (S.D. Tex. Aug. 22, 2006); *Price Waterhouse,* 797 F. Supp. at 1243-44; *Wellshire Secs., Inc.,* 773 F. Supp. at 576-77.

The remedy of disgorgement is available only to redress unjust enrichment and to deter future wrongdoing. *See Cavanagh*, 445 F.3d at 117*; SEC v. AbsoluteFuture.com*, 393 F.3d 94, 96 (2d Cir. 2004); *Jones II*, 476 F. Supp. 2d at 386. The SEC has failed to allege that it is necessary to deter future

wrongdoing, and there is no allegation that Alpert was unjustly enriched.  Therefore, disgorgement is inappropriate here.  *See Todd*, 2007 WL 1574756, at *18; *Gane*, 2005 WL 90154, at *18-19.

Civil penalties are not available because the SEC has not alleged any egregious violations, scienter or risk of future violations.  *See Snyder*, 2006 U.S. Dist. LEXIS 81830, at *33-37.  In addition, for the reasons discussed in the memorandum in support of Marc Gabelli's motion to dismiss, the SEC is not authorized to seek a penalty from Alpert for aiding and abetting a violation of the Advisers Act.  *See also SEC v. Bolla*, 550 F. Supp. 2d 54, 58-63 (D.D.C. 2008).

<u>Conclusion</u>

For the reasons discussed above, Defendant Bruce Alpert's motion to dismiss should be granted and the SEC's Complaint should be dismissed insofar as it asserts claims against him.

Dated:  New York, New York
        July 25, 2008

                                      Respectfully submitted,
                                      DECHERT LLP

                            By:  /s/ Kathleen N. Massey
                                      Edward A. McDonald
                                      Kathleen N. Massey
                                      Joshua I. Sherman
                            1095 Avenue of the Americas
                            New York, New York  10036
                            (212) 698-3500

                            *Counsel for Defendant Bruce Alpert*