UNITED STATES COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

               Plaintiff,

               v.

MARC J. GABELLI, and BRUCE ALPERT,

               Defendants.

------------------------------------------------------------------X

ECF CASE

Case No. 08-Civ-3868 (DAB)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MARC GABELLI'S MOTION TO DISMISS

Lewis J. Liman
Breon S. Peace
Jason P. Gottlieb
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
*Attorneys for Marc J. Gabelli*

# **TABLE OF CONTENTS**

|   |   |   | Page |
|---|---|---|---|
| TABLE OF AUTHORITIES | | | ii |
| ARGUMENT | | | 1 |
| I. | THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. GABELLI AND FAILS TO PLEAD FRAUD WITH PARTICULARITY | | 1 |
|   | A. | The Allegations Do Not Establish Mr. Gabelli's Knowledge Of A Violation | 1 |
|   | B. | The Allegations Do Not State A Claim For Aiding A 206(1) Violation | 6 |
| II. | THE SEC'S REQUESTS FOR RELIEF SHOULD BE DISMISSED | | 7 |
|   | A. | The Complaint Is Barred By The Statute of Limitations | 7 |
|   | B. | Congress Chose Not To Create The Civil Penalties The SEC Seeks | 10 |
| CONCLUSION | | | 10 |

# TABLE OF AUTHORITIES

| | Page(s) |
|---|---|
| **RULES AND STATUTES** | |
| 15 U.S.C. § 80b-9(e)(1) | 10 |
| **CASES** | |
| 380544 Canada, Inc. v. Aspen Tech., Inc., 544 F. Supp. 2d 199 (S.D.N.Y. 2008) | 3 |
| 3M Co. v. Browner, 17 F.3d 1453 (D.C. Cir. 1994) | 8 |
| Armstrong v. McAlpin, 699 F.2d 79 (2d Cir. 1983) | 1, 7 |
| Backman v. Polaroid Corp., 910 F.2d 10 (1st Cir. 1990) | 4 |
| Bailey v. Glover, 88 U.S. 342 (1874) | 8 |
| Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955 (2007) | 2 |
| Chiarella v. U.S., 445 U.S. 222 (1980) | 1 |
| Chill v. Gen. Elec Co., 101 F.3d 263 (2d Cir. 1996) | 6-7 |
| Corcoran v. N.Y. Power Auth., 202 F.3d 530 (2d Cir. 1999) | 8 |
| Denny v. Barber, 576 F.2d 465 (2d Cir. 1978) | 3 |
| Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (2005) | 9 |
| FEC v. Williams, 104 F.3d 237 (9th Cir. 1996) | 8 |
| First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y of the U.S., 164 F. Supp. 2d 383 (S.D.N.Y. 2001) | 4 |
| Glazer v. Formica Corp., 964 F.2d 149 (2d Cir. 1992) | 4 |

Holmberg v. Ambrecht,
327 U.S. 392 (1946) .................................................................................... 8

In re Advanta Corp. Sec. Litig.,
180 F.3d 525 (3d Cir. 1999) ........................................................................ 3-4, 5

In re Alstom SA Sec. Litig.,
406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................ 5

In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,
324 F. Supp. 2d 474 (S.D.N.Y. 2004) ........................................................ 3

In re BISYS Sec. Litig.,
397 F. Supp. 2d 430 (S.D.N.Y. 2005) ........................................................ 3

In re Bristol-Myers Squibb Sec. Litig.,
312 F. Supp. 2d 549 (S.D.N.Y. 2004) ........................................................ 3

In re Carter-Wallace, Inc. Sec. Litig.,
220 F.3d 36 (2d Cir. 2000) .......................................................................... 3, 6

In re Crude Oil Commodity Litig.,
No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007).... 6

In re DRDGOLD Ltd. Sec. Litig.,
472 F. Supp. 2d 562 (S.D.N.Y. 2007) ........................................................ 3

In re Leslie Fay Co., Inc. Sec. Litig.,
918 F. Supp. 749 (S.D.N.Y. 1996) .............................................................. 5

In re Union Carbide Corp. Consumer Products Bus. Sec. Litig,
666 F. Supp. 547 (S.D.N.Y. 1987) .............................................................. 5

Johnson v. SEC
87 F.3d 44 (D.C. Cir 1996)......................................................................... 10

Kalnit v. Eichler,
264 F.3d 131 (2d Cir. 2001) ........................................................................ 6

Law v. Medco Research, Inc.,
113 F.3d 781 (7th Cir. 1997) ...................................................................... 8

Lerner v. Fleet Bank, N.A.,
459 F.3d 273 (2d Cir. 2006) ........................................................................ 1

Moviecolor Ltd. v. Eastman Kodak Co.,
288 F.2d 80 (2d Cir. 1961) .......................................................................... 8

N.Y. v. Hendrickson Bros.,
840 F.2d 1065 (2d Cir. 1988) ........................................................................................... 9

N.Y. v. Niagara Mohawk Power Corp.,
263 F. Supp. 2d 650 (W.D.N.Y. 2003) ............................................................................. 8

Nat'l Parks & Conservation Assoc., Inc. v. Tenn. Valley Auth.,
502 F.3d 1316 (11th Cir. 2007) ........................................................................................ 8

O'Brien v. Nat'l Prop. Analyst Partners,
719 F. Supp. 222 (S.D.N.Y. 1989) ................................................................................... 9

Ross v. A.H. Robins Co.,
607 F.2d 545 (2d Cir. 1979) ............................................................................................. 6

Rothman v. Gregor,
220 F.3d 81 (2d Cir. 2000) ............................................................................................... 3

SEC v. Am. Bd. of Trade, Inc.,
751 F.2d 529 (2d Cir. 1984) ............................................................................................. 9

SEC v. Bolla,
No. 02-1506 (CKK), 2008 WL 1959502 (D.D.C. May 6, 2008) ................................... 10

SEC v. Buntrock,
No. 02 C 2180, 2004 U.S. Dist. LEXIS 9495 (N.D. Ill. May 25, 2004) .......................... 8

SEC v. Caserta,
75 F. Supp. 2d 79 (E.D.N.Y. 1999) .................................................................................. 4

SEC v. Druffner,
353 F. Supp. 2d 141 (D. Mass. 2005) ........................................................................... 1, 6

SEC v. Dunn,
No. 07 Civ. 2058(LAP), 2008 WL 4449379 (S.D.N.Y. Sept. 30, 2008) .......................... 6

SEC v. Durgarian,
477 F. Supp. 2d 342 (D. Mass. 2007) ....................................................................... 1, 5, 6

SEC v. Espuelas,
No. 06 Civ. 2435(RJH), 2008 WL 4414516 (S.D.N.Y. Sept. 30, 2008) ................... passim

SEC v. Fisher,
No. 07 C 4483, 2008 WL 2062699 (N.D. Ill. May 13, 2008) .......................................... 8

SEC v. Jones,
476 F. Supp. 2d 374 (S.D.N.Y. 2007) ..................................................................... 8, 9, 10

SEC v. Koenig,
532 F. Supp. 2d 987 (N.D. Ill. 2007) .................................................................................. 8

SEC v. Lucent Technologies Inc.,
No. Civ. 04-2315(WHW), 2005 WL 1206841 (D.N.J. May 20, 2005) ............................. 2, 6

SEC v. PIMCO Advisors Fund Mgmt. LLC,
341 F. Supp. 2d 454 (S.D.N.Y. 2004) ............................................................................... 2, 4

SEC v. Power,
525 F. Supp. 2d 415 (S.D.N.Y. 2007) ............................................................................... 9

SEC v. Scott,
565 F. Supp. 1513 (S.D.N.Y. 1983) ................................................................................. 9

SEC v. Scrushy,
No. CV-03-J-6155, 2005 WL 3279894 (N.D. Ala. Nov. 29, 2005) ................................. 8

SEC v. Tambone,
417 F. Supp. 2d 127 (D. Mass. 2006) ............................................................................... passim

SEC v. Todd,
No. 03CV2230 BEN(WMC), 2006 WL 1564892 (S.D. Cal. May 30, 2006) ................ 4

SEC v. Treadway,
430 F. Supp. 2d 293 (S.D.N.Y. 2006) ............................................................................... 1

Sheinbein v. Dudas,
465 F.3d 493 (Fed. Cir. 2006) ........................................................................................... 8

Shields v. Citytrust Bancorp, Inc.,
25 F.3d 1124 (2d Cir. 1994) .............................................................................................. 7

Shillman v. U.S.,
No. CV-99-3215, 2000 WL 923761 (6th Cir. June 29, 2000) .......................................... 8

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,
531 F.3d 190 (2d Cir. 2008) .............................................................................................. 7

Tellabs Inc. v. Makor Issues & Rights, Ltd.,
___ U.S. ___, 127 S. Ct. 2499 (2007) .............................................................................. 6

U.S. v. Core Labs. Inc.,
759 F.2d 480 (5th Cir. 1985) ............................................................................................. 8

U.S. v. Telluride,
146 F.3d 1241 (10th Cir. 1998) ......................................................................................... 9

**OTHER AUTHORITIES**

Harvey E. Bines, The Law of Investment Management, ¶ 2.02[2] (1978) ........................... 1

Marc J. Gabelli respectfully submits this reply memorandum of law in further support of his motion to dismiss. The SEC's brief sets up strawmen, relies on conclusions (rather than facts), and does not respond to Mr. Gabelli's principal cases and arguments. When the complaint itself is analyzed, it is clear it should be dismissed.

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. GABELLI AND FAILS TO PLEAD FRAUD WITH PARTICULARITY

The SEC does not dispute that to state a claim for aiding and abetting against Mr. Gabelli, it must plead facts showing that he had actual knowledge, or was at least reckless,[1] with respect to the Adviser's alleged 206(1) and 206(2) violation. See Armstrong v. McAlpin, 699 F.2d 79, 91-92 (2d Cir. 1983), SEC v. Tambone, 417 F. Supp. 2d 127, 134-7 (D. Mass. 2006). Nor does it dispute that the knowledge it would need to allege is of the Adviser's intent to defraud in connection with the 206(1) charge and its negligence with respect to the 206(2) charge. See July 25, 2008 Mem. of Law in Supp. of Marc Gabelli's Mot. to Dismiss ("Gabelli Br.") 6-7. Those facts must be pleaded with particularity. See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292-93 (2d Cir. 2006) (applying Rule 9(b) and its "strong inference" requirement to claim for aiding and abetting fraud).[2]

#### A. The Allegations Do Not Establish Mr. Gabelli's Knowledge Of A Violation

Although the SEC spills much ink on the argument that GGGF violated Section 206, it does not allege anything other than conclusions to hold Mr. Gabelli liable for those

---

[1] Recklessness is not the right standard. Recklessness is sufficient scienter where the defendant owed a fiduciary duty to speak. SEC Opp'n Br. ("Opp. Br.") 6 n.7 – circumstances the SEC does not allege here with respect to Mr. Gabelli. See Chiarella v. U.S., 445 U.S. 222, 235 (1980); SEC v. Treadway, 430 F. Supp. 2d 293, 339 (S.D.N.Y. 2006) ("mere awareness and approval of the primary violation is insufficient to make out a claim for substantial assistance."); see also Harvey E. Bines, The Law of Investment Management, ¶ 2.02[2] (1978) (absent assignment of other duties, specific duties of investment managers are to "(i) invest promptly, (ii) invest prudently and (iii) shift investments according to changes in the safety of existing investments.").

[2] See also SEC v. Durgarian, 477 F. Supp. 2d 342, 354-55 (D. Mass. 2007) (dismissing SEC claims for aiding and abetting securities fraud for failure to satisfy Rule 9(b)); SEC v. Druffner, 353 F. Supp. 2d 141,150-51 (D Mass. 2005) (same).

violations.[3] The SEC argues that Mr. Gabelli was the "architect" of a market timing agreement and authorized market timing. Opp. Br. 7-8. But the SEC does not claim that market timing, or even an alleged quid pro quo agreement, violated Section 206: "market timing is not illegal per se." Gabelli Br. 1 n.1. And the SEC does not dispute that market timing agreements themselves are legal. See SEC v. PIMCO Advisors Fund Mgmt. LLC, 341 F. Supp. 2d 454, 468 (S.D.N.Y. 2004); Tambone, 417 F. Supp. 2d at 136.

Rather, the SEC argues that the Adviser violated Section 206 because its COO Mr. Alpert stated to GGGF's Board in February 2001 that the Adviser was making efforts to stop "market timers (scalpers) [that had been] disruptive to the Fund and the management" without disclosing "that a market timer was being allowed to time GGGF in extremely large amounts" and was causing "harm [to] GGGF and its long-term investors." Opp. Br. 4-6. The SEC, however, does not allege anything other than a conclusion to support its claim that Mr. Gabelli "knew, or [was] reckless in not knowing, that GGGF was being harmed." Compl. ¶ 42. That conclusion cannot satisfy even Rule 8, much less Rule 9(b). See Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955 (2007); SEC v. Espuelas, No. 06 Civ. 2435(RJH), 2008 WL 4414516, at *10 (S.D.N.Y. Sept. 30, 2008) ("Conclusory allegations do not support a strong inference of fraudulent intent."); SEC v. Lucent Technologies Inc., No. Civ. 04-2315(WHW), 2005 WL 1206841, at *5-7 (D.N.J. May 20, 2005) (dismissal for failure to plead facts supporting strong inference of scienter).

Unlike every other market timing case, there is no allegation here that the prospectus prohibited market timing. Compare PIMCO, 341 F. Supp. 2d at 459. The SEC does not identify any internal fund rules that the trading violated, nor allege that Mr. Gabelli concealed the trading or had any indication that the market timing may have been harmful to

---

[3]   Mr. Gabelli joins Mr. Alpert's arguments that the SEC has not stated a claim for violation of 206(1) or (2).

2

GGGF or its long-term shareholders. The SEC can point to no employee who told him at the time that the trading was harmful to GGGF's investors. Cf. Espuelas at *16.

The SEC's allegations regarding "the sheer magnitude of Headstart's trading" and harm caused by that trading as of August 2002 cannot establish Mr. Gabelli's contemporaneous knowledge of a violation. Opp. Br. 7; Compl. ¶¶ 40-41. See Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978); In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36, 42 (2d Cir. 2000).[4] The SEC does not plead (1) how many Headstart trades there were by February 2001 and whether that number is "staggering"; (2) that Mr. Gabelli knew the frequency of Headstart's trading (see In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 567-68 (S.D.N.Y. 2004); Espuelas at *11); or (3) that Mr. Gabelli knew such trading was harmful. Cf. In re BISYS Sec. Litig., 397 F. Supp. 2d 430, 447-48 (S.D.N.Y. 2005) ("size of the fraud alone does not create an inference of scienter.").[5] After investigating five years, all the SEC alleges is that Mr. Gabelli "was affirmatively made aware of Headstart's market-timing on more than one occasion and referred to the market timer in writing more than once." Opp. Br. 6; Compl. ¶ 42. See Tambone, 417 F. Supp. 2d 127, 134-7 (dismissing §§ 206(1) and (2) charges where allegations failed to satisfy the particularity requirement of Rule 9(b)); Espuelas at *17.

Mr. Gabelli is not alleged to have been an expert on frequent trading; he was the portfolio manager of GGGF. See Espuelas at *11 (accounting knowledge "cannot be attributed to defendants simply because of their positions at the company") (internal citation omitted); In re Advanta Corp. Sec. Litig., 180 F.3d 525, 539 (3d Cir. 1999) ("[g]eneralized imputations of

---

[4] The argument is reminiscent of the long and consistent line of cases in which plaintiffs unsuccessfully argue that the size of an accounting restatement alone is sufficient to plead scienter. See Rothman v. Gregor, 220 F.3d 81, 90-92 (2d Cir. 2000); Espuelas at *10; 380544 Canada, Inc. v. Aspen Tech., Inc., 544 F. Supp. 2d 199, 226 (S.D.N.Y. 2008); In re DRDGOLD Ltd. Sec. Litig., 472 F.Supp.2d 562, 575 (S.D.N.Y. 2007); In re Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F. Supp. 2d 474, 488-92, 496 (S.D.N.Y. 2004).

[5] Further, if Marc Gabelli knew from magnitude alone, so did the general public, since the volume of the fund turnover was publicly disclosed.

knowledge do not suffice, regardless of the defendants' positions within the company."). The SEC itself alleges that Mr. Alpert, Gabelli Funds' COO and alleged "head of the market timing police," provided ground rules for Headstart's trading, allowed the trading, reviewed the trading, knew Headstart was frequently trading, and allowed it to continue. Opp. Br. 8-9, 13-14. If true, there was no reason for Mr. Gabelli to believe Mr. Alpert's statements to be fraudulent. See SEC v. Todd, No. 03CV2230 BEN(WMC), 2006 WL 1564892, at *7 (S.D. Cal. May 30, 2006) (no scienter where corporate officer, without sufficient expertise to challenge accounting treatment, relied on expert team, who did not voice concerns); SEC v. Caserta, 75 F. Supp. 2d 79, 94 (E.D.N.Y. 1999) (good faith reliance on advice is a defense to scienter in securities fraud cases).[6] And, while today (after General Spitzer's 2003 investigation) market timing has taken on a bad name, GGGF stopped it in August 2002, without any objection from Mr. Gabelli, when its potential harm was far from obvious. Indeed, in the only cases regarding market timing before 2002, funds were sued for failure to permit it. See, e.g., First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y of the U.S., 164 F. Supp. 2d 383 (S.D.N.Y. 2001).

      This case is thus comparable to Tambone, which the SEC understandably tries to bury in a footnote (Opp. Br. 8 n.10), rather than PIMCO, upon which it mistakenly relies. In Tambone, the court dismissed claims that defendants who entered into market-timing agreements aided and abetted § 206 violations because the SEC had not "pled with the requisite degree of particularity that the defendants had 'actual knowledge' of the improper activity [or] possessed the 'conscious intent' necessary for their inaction to qualify as knowing and substantial assistance." 417 F. Supp. 2d at 137. Likewise here, it is not enough that Mr. Gabelli (unlike

---

[6] Even if Gabelli Funds or Mr. Alpert had a duty to speak under the "make complete and accurate" rule in Glazer v. Formica Corp., 964 F.2d 149, 152 (2d Cir. 1992) (quoting Backman v. Polaroid Corp., 910 F.2d 10, 12 (1st Cir. 1990)) – and Mr. Gabelli adopts Mr. Alpert's arguments on this point – that duty is not automatically imputed to others.

Mr. Tambone) was "GGGF's portfolio manager." Opp. Br. 7-8. He, like Mr. Tambone, had "no role in preparing, drafting or signing the allegedly misleading" communication, and there is no allegation that he knew of a violation. 417 F. Supp. 2d at 133; see also Durgarian, 477 F. Supp. 2d at 350 (dismissing charge alleging duty to disclose based solely on defendants' positions).[7]

By contrast, in PIMCO, the SEC's sole authority on this point, the complaint alleged – in great detail – that the defendant:

- was not just a portfolio manager on the relevant funds (as the SEC suggests), but was also the Chief Executive Officer and Chief Investment Officer of the Adviser to those funds (PIMCO Compl. ¶ 10);[8]
- had personal authority over the fraudulent prospectus disclosures (id. ¶ 39);[9] and
- was informed repeatedly in writing – and indeed recognized explicitly in his own writing – that the trading in question was disruptive, harmful to investors, and contrary to public disclosures (id. ¶¶ 21, 23, 30, 32, 39, 49-53).

Thus, the defendant bore personal responsibility for reporting such issues to the board and "owed a fiduciary duty to those who were defrauded by the misleading disclosures." PIMCO, 341 F. Supp. 2d at 468.[10] Here, there is no allegation Mr. Gabelli knew of the alleged harm, much less that he did anything to further a violation.

---

[7] See also Espuelas at *11; Advanta, 180 F.3d at 533-35; In re Alstom SA Sec. Litig., 406 F. Supp. 2d 433, 468 (S.D.N.Y. 2005).

[8] The First Amended Complaint in SEC v. PIMCO Advisors Fund Mgmt. LLC, No. 04 Civ-3464 (VM) (S.D.N.Y. Nov. 10, 2004) ("PIMCO Compl."), is attached hereto as Appendix A.

[9] Compare In re Union Carbide Corp. Consumer Products Bus. Sec. Litig. 666 F. Supp. 547, 560 (S.D.N.Y. 1987) (motion to dismiss granted because no allegation was made of personal liability for misrepresentations beyond mere titles) with In re Leslie Fay Co., Inc. Sec. Litig., 918 F. Supp. 749, 761-62 (S.D.N.Y. 1996) (motion to dismiss denied because of allegation that defendants made misleading statements that they knew would be used in disclosure to investors).

[10] Indeed, the Complaint here only conclusorily alleges that Mr. Gabelli "created the market timing agreement with Headstart" in the first place. Opp Br. 6, citing Compl. ¶¶ 20-27. There is no allegation of a written agreement, nor of any statement that Mr. Gabelli affirmatively made acceding to, or even negotiating, any such "agreement." After five years of investigation, the SEC still cannot allege the existence of this purported agreement with particularity. Compare PIMCO Compl. ¶¶ 18-22, 24-29 (containing highly detailed allegations of the terms of the agreement defendants negotiated).

### B. The Allegations Do Not State A Claim For Aiding A 206(1) Violation

The SEC did not even charge the Adviser with a § 206(1) violation, and its skimpy complaint cannot make out a claim for a § 206(1) violation, much less aiding and abetting one. In arguing Mr. Gabelli had the requisite scienter, the SEC's brief attacks a strawman. Mr. Gabelli never argued, as the SEC claims, that the PSLRA applies to this lawsuit. Opp. Br. 14. He argued that the SEC must plead with particularity the facts establishing "a strong inference of scienter" – as the SEC concedes is required. Opp. Br. 2; see also Ross v. A.H. Robins Co., 607 F.2d 545, 558 (2d Cir. 1979); SEC v. Dunn, No. 07 Civ. 2058(LAP), 2008 WL 4449379, at *28 (S.D.N.Y. Sept. 30, 2008).[11] The SEC must show "an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to [Mr. Gabelli] or so obvious that [he] must have been aware of it." Carter-Wallace, 220 F.3d at 39-40; Dunn, 2008 WL 4449379, at *9 n.26.[12]

The very cases the SEC cites thus demonstrate why, as a matter of law, its allegations do not satisfy the high bar established by Rule 9(b) on either of the allegations. Opp. Br. 7 n.8. In Carter-Wallace, allegations that defendants promoted a drug as safe while in possession of a "sheer number of adverse reports" demonstrating the drug was unsafe did not give rise to a strong inference of scienter. 220 F.3d at 40, 42. And in Chill, detailed factual

---

[11] The SEC is wrong that the Supreme Court's textual interpretation of "strong inference of scienter" in Tellabs Inc. v. Makor Issues & Rights, Ltd., ___ U.S. ___, 127 S. Ct. 2499, 2509 (2007) is irrelevant to the proper construction of that very same language in the context of Rule 9(b). Opp. Br. 14; see Tellabs, 127 S. Ct. at 1250 ("The strength of an inference cannot be decided in a vacuum. ... [t]o determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff"); In re Crude Oil Commodity Litig., No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *7 n.5 (S.D.N.Y. June 28, 2007) (Tellabs relevant to interpretation of 9(b) outside PSLRA context). However, even without applying Tellabs, courts have dismissed numerous cases where – as here – the SEC has failed to meet the requirements of Rule 9(b). See Espuelas at *16-17; Durgarian, 477 F. Supp. 2d at 354-55; Tambone, 417 F. Supp. 2d at 134-7; Druffner, 353 F. Supp. 2d at 150-51; Lucent at **5-7.

[12] The SEC does not argue that its allegations establish "motive and opportunity" to commit fraud and, in the absence of such allegation, "the strength of the circumstantial allegations must be correspondingly greater." Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001); see also Espuelas at *10.

allegations that senior executives were aware of a "huge increase" in trading and "multi-billion dollar daily fluctuations" in the balance sheet did not give rise to a strong inference of scienter, because plaintiffs did not "demonstrate how the increased level of activity at Kidder, as reflected in GE's consolidated financial records, would necessarily have indicated to GE that there was misconduct." Chill v. Gen. Elec Co., 101 F.3d 263, 270 (2d Cir. 1996) ("Fraud cannot be inferred simply because GE might have been more curious or concerned about the activity at Kidder"). See also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 197 (2d Cir. 2008) (no inference of scienter where competing inference that misstatements "were the result of merely careless mistakes at the management level based on false information fed it from below" was equally appealing); Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994) (even if management "should have been more alert and more skeptical, … nothing alleged indicates that management was promoting a fraud").

For the same reasons, the SEC's allegations that the Adviser knew Headstart's trading was harmful because the Adviser "was monitoring market timing" do not establish scienter. Opp. Br. 3-6; Compl. ¶¶ 31, 34-35. And, even if they did, there is no allegation Mr. Gabelli knew of this alleged violation. See Armstrong, 699 F.2d at 91-92 (aiding and abetting requires knowledge of the underlying violation).

## II.   THE SEC'S REQUESTS FOR RELIEF SHOULD BE DISMISSED

### A.   The Complaint Is Barred By The Statute of Limitations

The SEC argues that the § 2462 limitations period (1) does not begin to run until a violation is discovered, and (2) is tolled by fraudulent concealment. Opp. Br. 14-15. Every Circuit Court that has considered the first issue has held that a claim first accrues under § 2462

7

when the cause of action first existed.[13] So has the leading (and only) decision from this District, SEC v. Jones, 476 F. Supp. 2d 374, 381-85 (S.D.N.Y. 2007) ("Jones II"), a decision the SEC does not even attempt to address. That holding follows naturally from the language of § 2462, which applies to (and establishes the same rules for) all actions "for the enforcement of any civil fine, penalty, or forfeiture." Indeed, the only authority the SEC cites in support of its argument is a single case from the Northern District of Illinois that has never been followed by any court in this Circuit, and has been sharply distinguished in its own. See Opp. Br. 15 n.15.[14]

The SEC does not identify a single "affirmative step[]" by Marc Gabelli to prevent discovery of the purported fraud. Corcoran v. N.Y. Power Auth., 202 F.3d 530, 543 (2d Cir. 1999); Jones II, 476 F. Supp. 2d at 382; see Opp. Br. 17.[15] And the omissions by Mr. Alpert the SEC claims made the alleged fraud "self-concealing" are those omissions the SEC claims constituted a fraud in the first place; they cannot satisfy the self-concealing doctrine. See Jones II, 476 F. Supp. 2d at 382; see also Gabelli Br. 20-21.[16]

---

[13] See, e.g., U.S. v. Core Labs. Inc., 759 F.2d 480, 482-83 (5th Cir. 1985); Shillman v. U.S., No. CV-99-3215, 2000 WL 923761, at **5-6 (6th Cir. June 29, 2000); FEC v. Williams, 104 F.3d 237, 240 (9th Cir. 1996); Nat'l Parks & Conservation Assoc., Inc. v. Tenn. Valley Auth., 502 F.3d 1316, 1322 (11th Cir. 2007); 3M Co. v. Browner, 17 F.3d 1453, 1462 (D.C. Cir. 1994); Sheinbein v. Dudas, 465 F.3d 493, 496 (Fed. Cir. 2006). See also SEC v. Scrushy, No. CV-03-J-6155, 2005 WL 3279894, at *3 (N.D. Ala. Nov. 29, 2005) ("the appropriate start of the statute of limitations is the date of the violations for which the civil penalties are sought, not the discovery of such violations"); N.Y. v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650, 660 (W.D.N.Y. 2003).

[14] The SEC cites SEC v. Buntrock, No. 02 C 2180, 2004 U.S. Dist. LEXIS 9495 (N.D. Ill. May 25, 2004), and SEC v. Koenig, 532 F. Supp. 2d 987 (N.D. Ill. 2007), the latter of which was a denial of a motion to reconsider the former. These decisions rely on Law v. Medco Research, Inc., 113 F.3d 781 (7th Cir. 1997), a case dealing with a private right of action and not § 2462. See also SEC v. Fisher, No. 07 C 4483, 2008 WL 2062699, at *4 (N.D. Ill. May 13, 2008) (stating that Law involved (1) a private plaintiff, not the SEC, whose "veritable army of trained attorneys" with "subpoena power even before it files a lawsuit" provide "a distinct investigatory advantage," and (2) a one-year limitations period, whereas § 2462 is five years, which "cuts against application of the discovery rule."). Mr. Gabelli adopts Mr. Alpert's arguments with respect to Holmberg v. Ambrecht, 327 U.S. 392 (1946), Bailey v. Glover, 88 U.S. 342 (1874), and Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80, 83 (2d Cir. 1961).

[15] The SEC also wholly fails to allege in its Complaint, or explain in its Opposition, what diligence it exercised. Under Jones II, the Complaint should be dismissed for that reason alone. See Alpert Reply pp. 5-6.

[16] Compare Opp. Br. 18 (essence of the case is that Mr. Gabelli and Mr. Alpert maintained an agreement to permit Headstart to engage in market-timing in exchange for a long-term investment in a Gabelli-managed hedge fund and that the agreement was hidden from the board) to Opp. Br. 3 (arguing Mr. Gabelli violated § 206 because the agreement was "hid ... from GGGF's Board").

8

Likewise, Mr. Alpert has not engaged in "affirmative acts of concealment" – without the allegation that information was withheld from the Board, there would be no claim of a § 206 violation at all. Jones II, 476 F. Supp. 2d at 382. And, as to Mr. Gabelli, the SEC does not even attempt to address the long line of cases that hold a plaintiff may not "use fraudulent concealment by one defendant as a basis for tolling the statute of limitations against another defendant who did not engage in affirmative fraudulent acts to conceal." O'Brien v. Nat'l Prop. Analyst Partners, 719 F. Supp. 222, 232 (S.D.N.Y. 1989); see also Gabelli Br. 20-21.[17]

The SEC claims that the statute of limitations does not apply to equitable relief. Opp. Br. 14. But the SEC must still plead facts that would entitle it to an injunction or disgorgement and make those remedies other than punitive. Cf. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005) (plaintiff must plead loss and causation). Although the SEC has clarified that it is not seeking sums representing the alleged harm to investors, it does not allege that Mr. Gabelli was unjustly enriched at all. And, the only facts that the SEC has pleaded here – Mr. Gabelli's current position as director of a public company and the fact that he is challenging the legal merits of the SEC's claim – are irrelevant to establishing that an injunction would be equitable and not punitive. See SEC v. Am. Bd. of Trade, Inc., 751 F.2d 529, 543 (2d Cir. 1984); SEC v. Scott, 565 F. Supp. 1513, 1538 (S.D.N.Y. 1983).[18] See also U.S. v. Telluride, 146 F.3d 1241, 1245-46 (10th Cir. 1998) (for purposes of § 2462, a "penalty," is "a sanction or

---

[17] The SEC cites two cases for the proposition that "Alpert's concealing actions can be attributed to Marc Gabelli" (Opp. Br. 17), but neither relieves the SEC of its pleading burden to establish fraudulent concealment by Mr. Gabelli. In N.Y. v. Hendrickson Bros., 840 F.2d 1065, 1083-84 (2d Cir. 1988), the alleged fraud was a "bid-rigging conspiracy," which "is the kind of enterprise that requires a number of participants" and the court held "the record adequately established fraudulent concealment by all defendants" (emphasis added). And the SEC does not address the argument made in Mr. Gabelli's Opening Brief regarding SEC v. Power, 525 F. Supp. 2d 415, 426 (S.D.N.Y. 2007), where the defendant was alleged to have deliberately created an accounting scheme expressly designed to avoid detection.

[18] Although there is an allegation in the settlement of In the Matter of RS Inv. Mgmt., Inc. (and it is a settlement, not a litigated decision) that a RS representative entered into a market-timing agreement for a $1 million investment, the SEC neglects to mention that it did charge that representative.

punishment imposed for violating a public law which goes beyond compensation for the injury caused by the defendant"); Jones II, 476 F. Supp. 2d at 382 (rejecting injunctive relief); Johnson v. SEC, 87 F.3d 484, 488 (D.C. Cir. 1996) (same).

### B. Congress Chose Not To Create The Civil Penalties The SEC Seeks

The SEC admits that under the plain language of the IAA § 209(e) and the ruling of the only court to have considered the question, the court may impose civil penalties only against the person who violated the Advisers Act, and not an alleged aider and abettor. See 15 U.S.C. § 80b-9(e)(1); SEC v. Bolla, No. 02-1506 (CKK), 2008 WL 1959502, at *8 (D.D.C. May 6, 2008). The SEC has not identified any flaw in Bolla's legal analysis nor any argument it overlooked, and each argument the SEC now makes was made and rejected in Bolla after that court's "searching consideration." Id. at *8.

### CONCLUSION

For the reasons above and in our Opening Brief, the complaint should be dismissed or, in the alternative, the § 206(1) claim should be dismissed, or the claims for civil penalties and injunctive relief should be dismissed in their entirety with prejudice.

DATED:  November 3, 2008
        New York, NY

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
Lewis J. Liman
Breon S. Peace
Jason P. Gottlieb
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Marc J. Gabelli