UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- X
:
SECURITIES AND EXCHANGE COMMISSION, :
:
             Plaintiff, :
: Civil Action No. 08-CV-3868 (DAB)
       v. :
:
MARC J. GABELLI, :
and BRUCE ALPERT, :
:
            Defendants. :
:
------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT BRUCE ALPERT'S MOTION TO DISMISS
<u>ALL CLAIMS AGAINST HIM IN THE COMPLAINT</u>**

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

*Counsel for Bruce Alpert*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

Preliminary Statement ..................................................................................................................... 1

Argument ........................................................................................................................................ 1

I.     THE REMEDIES THE SEC SEEKS ARE NOT AVAILABLE ...................................................... 1

II.    EVEN IF THE SEC WERE ENTITLED TO THE REMEDIES IT SEEKS, THE SEC FAILS TO ALLEGE ANY CLAIMS AGAINST ALPERT ........................................................... 6

     A.    The SEC Fails To Allege Alpert Aided And Abetted A Violation ................................... 7

     B.    The SEC Fails To Plead With Particularity That Alpert Misrepresented Any Facts, Participated In Any Scheme Or Did So With Scienter ......................................... 8

Conclusion .................................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

*3M Co. v. Browner*,
    17 F.3d 1453 (D.C. Cir. 1994)................................................................................................3

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
    544 F. Supp. 2d 199 (S.D.N.Y. 2008) ....................................................................................2

*Adams v. Woods*,
    6 U.S. 336 (1805)....................................................................................................................3

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990).....................................................................................................9

*Bailey v. Glover*,
    88 U.S. 342 (1874)..................................................................................................................3

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)............................................................................................................2

*Bilick v. Eagle Elec. Mfg. Co.*,
    807 F. Supp. 243 (E.D.N.Y. 1992) ........................................................................................4

*Butala v. Agashiwala*,
    916 F. Supp. 314 (S.D.N.Y. 1996) .....................................................................................4, 5

*In re Carter-Wallace, Inc. Secs. Litig.*,
    220 F.3d 36 (2d Cir. 2000) ...................................................................................................10

*Exploration Co. v. United States*,
    247 U.S. 435 (1918)................................................................................................................3

*Farr v. Shearson Lehman Hutton, Inc.*,
    755 F. Supp. 1219 (S.D.N.Y. 1991) ......................................................................................4

*Frigitemp Corp v. Financial Dynamics Fund*,
    524 F.2d 275 (2d Cir. 1975) ...................................................................................................4

*Glazer v. Formica Corp.*,
    964 F.2d 149 (2d Cir. 1992) ...................................................................................................9

*Griffin v. McNiff*,
    744 F. Supp. 1237 (S.D.N.Y. 1990) ......................................................................................5

*Holmberg v. Armbrecht*,
    327 U.S. 392 (1946)................................................................................................................3

*Johnson v. SEC*,
    87 F.3d 484 (D.C. Cir. 1996)..................................................................................................1

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ..................................................................................................10

*Long v. Abbott Mortgage Corp.*,
    459 F. Supp. 108 (D. Conn. 1978).........................................................................................5

*Martin v. Consultants & Adm'rs, Inc.*,
    966 F.2d 1078 (7th Cir. 1992) ............................................................................................3, 4

*In re Merrill Lynch Ltd. Partnerships Litig.*,
    7 F. Supp. 2d 256 (S.D.N.Y. 1997) ........................................................................................4

*Moviecolor Ltd. v. Eastman Kodak Co.*,
    288 F.2d 80 (2d Cir. 1961) ....................................................................................................3

*New York v. Hendrickson Bros., Inc.*,
    840 F.2d 1065 (2d Cir. 1988) ................................................................................................3

*Palladino v. City of New York*,
    No. 07-CV-9246, 2008 WL 44539503 (S.D.N.Y. Sept. 30, 1998) .......................................2

*In re Pfizer Secs. Litig.*,
    No. 04 Civ. 9866, 2008 WL 2627131 (S.D.N.Y. July 1, 2008) ............................................2

*SEC v. Berry*,
    No. C-07-04431, 2008 WL 4065865 (N.D. Cal. Aug 27, 2008) .......................................4, 5

*SEC v. Bolla*,
    550 F. Supp. 2d 54 (D.D.C. 2008).........................................................................................5

*SEC v. Buntrock*,
    No. 02-C-2180, 2004 U.S. Dist. LEXIS 9495 (N.D. Ill. May 25, 2004).............................3

*SEC v. Capital Gains Research Bureau, Inc.*,
    375 U.S. 180 (1963)...........................................................................................................8, 9

*SEC v. Cavanagh*,
    155 F.3d 129 (2d Cir. 1998) ..................................................................................................5

*SEC v. Cedric Kushner Promotions, Inc.*,
    417 F. Supp. 2d 326 (S.D.N.Y. 2006) ...................................................................................8

*SEC v. Colonial Inv. Mgmt. LLC*,
    No. 07 Civ. 8849, 2008 U.S. Dist. LEXIS 41442 (S.D.N.Y. May 23, 2008).......................5

*SEC v. DiBella*,
    409 F. Supp. 2d 122 (D. Conn. 2006)....................................................................................5

*SEC v. Espuelas*,
    __ F. Supp. 2d __, 2008 WL 4414516 (S.D.N.Y. Sept. 30, 2008) ..........................7, 8, 10

*SEC v. Jones*,
    476 F. Supp. 2d 374 (S.D.N.Y. 2007) ....................................................................... 1, 5, 6

*SEC v. Koenig*,
    532 F. Supp. 2d 987 (N.D. Ill. 2007) ................................................................................ 4

*SEC v. Lucent Techs., Inc.,*
    No. Civ.-04-2315, 2005 WL 1206841 (D.N.J. May 20, 2005) ....................................... 10

*SEC v. PIMCO Advisors Fund Mgmt. LLC*,
    341 F. Supp. 2d 454 (S.D.N.Y. 2004) .............................................................................. 7

*SEC v. Pasternak*,
    561 F. Supp. 2d 459 (D.N.J. 2008) .................................................................................. 8

*SEC v. Power*,
    525 F. Supp. 2d 415 (S.D.N.Y. 2007) .......................................................................... 1, 8

*SEC v. Tambone*,
    417 F. Supp. 2d 127 (D. Mass. 2006) .............................................................................. 7

*SEC v. Treadway*,
    430 F. Supp. 2d 293 (S.D.N.Y. 2006) .............................................................................. 8

*SEC v. Willis*,
    777 F. Supp. 1165 (S.D.N.Y. 1991) ................................................................................. 2

*Shah v. Meeker*,
    435 F.3d 244 (2d Cir. 2006) ............................................................................................ 2

*Wood v. Carpenter,*
    101 U.S. 135 (1879) ........................................................................................................ 4

*World Wrestling Entertainment, Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) .............................................................................. 5

## STATUTE

28 U.S.C. § 2462 .................................................................................................................*passim*

**Preliminary Statement**

The SEC attempts to downplay the fact that its case is based on conduct that occurred outside the statute of limitations. The SEC previously acknowledged this problem when it required Alpert to enter into a tolling agreement, but the SEC then continued to sleep on its rights. Because Headstart's trading ended in August 2002, most of the SEC's requests for injunctive relief and civil penalties are time-barred. To the extent the claims are not time-barred, the SEC is still not entitled to any of the relief it seeks because the SEC fails to allege Alpert poses any risk of future violations or that he was unjustly enriched.

The SEC seeks to avoid the statute of limitations by asserting claims arising out of a September 2003 disclosure. Putting aside that they were not among the claims the SEC included in its initial Wells notice to Alpert, the SEC fails to allege viable claims relating to that disclosure.

**Argument**

**I.    THE REMEDIES THE SEC SEEKS ARE NOT AVAILABLE.**

To avoid the application of Section 2462 to its request for injunctive relief, the SEC argues that "there is no statute of limitations for Commission enforcement actions, such as this one, which seek equitable relief." Opp. at 15. That is not correct. The issue is not whether the relief sought is equitable. The issue is whether the relief sought is punitive, in which case the statute applies. *See* 28 U.S.C. § 2462; *Johnson v. SEC*, 87 F.3d 484, 487-92 (D.C. Cir. 1996); *SEC v. Jones*, 476 F. Supp. 2d 374, 381 (S.D.N.Y. 2007). As the authority relied upon by the SEC confirms, the Second Circuit has held that, although some injunctive relief is remedial rather than punitive, injunctive relief is punitive unless, among other things, there is a reasonable or substantial likelihood the defendant will commit future securities law violations. *See, e.g., SEC v. Power*, 525 F. Supp. 2d 415, 427 (S.D.N.Y. 2007); *see also* Memo in Support at 5-6.

Based on the SEC's Complaint and what can be reasonably inferred from it: the trading at issue ended at least five years ago, a year before the NYAG's investigation of market timing was made

1

public; Alpert instructed Headstart to stop the trading; there was no violation by Alpert before or after the alleged violations; and the SEC has not sought injunctive relief against Alpert in a manner that remotely suggests there is a risk of any future violation. Compl. ¶¶ 28, 43. In similar circumstances, where significant time had elapsed since the alleged violation and the SEC had made no attempt to expedite the requested injunctive relief, courts have found requests for injunctive relief punitive and therefore subject to the statute. *See* Memo in Support at 5-6.[1]

The SEC acknowledges the Court may consider the collateral consequences of an injunction in determining whether an injunction is punitive. Opp. at n. 22. However, the SEC incorrectly asserts that defendants fail to identify collateral consequences of an injunction that are unique to them. An injunction would impose significantly harsher consequences on Alpert than it would on many others. As discussed in Alpert's moving brief (at 6), given Alpert's work for an investment adviser, an injunction would trigger an automatic statutory bar that would prevent him from working in the industry in which he has worked for more than 25 years.

The SEC argues that its request for civil penalties and, if it is deemed punitive, its request for injunctive relief should not be time-barred because the statute of limitations in a securities fraud case begins to run at the time the fraud is discovered. Opp. at 15. Alternatively, the SEC argues that the statute in this case was tolled by fraudulent concealment. *Id.* at 16-19. Neither argument has any merit.

The discovery rule does not apply to cases subject to Section 2462, because such a rule is

---

[1] In a footnote, the SEC argues that likelihood of recurrence is a factual matter to be determined after discovery. The SEC cites no authority in support of its argument. Opp. at n. 20. In fact, the Court should grant a motion to dismiss where a plaintiff fails "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Here, the Court can determine from the face of the Complaint that the injunctive relief sought is punitive and therefore time-barred. Where the complaint makes clear a claim is time-barred, courts regularly grant motions to dismiss. *See, e.g.*, *Shah v. Meeker*, 435 F.3d 244, 248-52 (2d Cir. 2006); *In re Pfizer Secs. Litig.*, No. 04 Civ. 9866, 2008 WL 2627131, at *15-16 (S.D.N.Y. July 1, 2008); *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 215 (S.D.N.Y. 2008); *SEC v. Willis*, 777 F. Supp. 1165, 1174 (S.D.N.Y. 1991); *see also Palladino v. City of New York*, No. 07-CV-9246, 2008 WL 44539503, at *3 (S.D.N.Y. Sept. 30, 1998).

"outside the language of the statute; inconsistent with judicial interpretations of § 2462; unsupported by the discovery of injury rule adopted in non-enforcement, remedial cases; and incompatible with the functions served by a statute of limitations in penalty cases." *3M Co. v. Browner*, 17 F.3d 1453, 1462-63 (D.C. Cir. 1994).[2]  The rule is also inconsistent with the Supreme Court's view that actions for penalties "brought at any distance of time … would be utterly repugnant to the genius of our laws … where not even treason can be prosecuted after a lapse of three years." *Adams v. Woods*, 6 U.S. 336, 342 (1805).

In support of the proposition that a discovery rule should be read into the statute of limitations for securities fraud cases, the SEC misleadingly quotes from *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 83 (2d Cir. 1961), and mischaracterizes Supreme Court precedent.  Opp. at 15-16.  First, *Moviecolor*, which was an antitrust case, did not create or recognize a federal discovery rule.  It simply described the holding in another case, *Bailey v. Glover*, 88 U.S. 342, 349-50 (1874), which has been referred to as the "keystone of federal fraudulent concealment doctrine."  *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1095 (7th Cir. 1992); *see also New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988).  Second, the SEC's assertion that "Supreme Court precedent … holds that the statute of limitations in fraud actions does not accrue until discovery of the fraud" (Opp. at 16) is baseless.  The SEC relies upon *Holmberg v. Armbrecht*, 327 U.S. 392 (1946), and *Exploration Co. v. United States*, 247 U.S. 435, 446-50 (1918).  However, those cases both follow *Bailey*, and involve, as did *Bailey*, the fraudulent concealment doctrine.  Moreover, they are inapposite because they did not concern Section 2462 or any similar statute dealing with punitive remedies.[3]

---

[2] *See also* Memo in Support at 7-8; Gabelli Reply at n. 13.

[3] The SEC also cites *SEC v. Buntrock*, No. 02-C-2180, 2004 U.S. Dist. LEXIS 9495 (N.D. Ill. May 25, 2004) and *SEC v. Koenig*, 532 F. Supp. 2d 987 (N.D. Ill. 2007) in support of its argument that "[s]everal courts have held that the statute of limitations in a securities fraud case begins to accrue at the time the fraud was discovered."  Opp. at 15.  The SEC's reliance on those decisions is misplaced.  *See* Gabelli Reply at n. 14.

3

The SEC's argument that the statute of limitations should be tolled due to defendants' fraudulent concealment also fails because the SEC does not allege that there was affirmative concealment of the claims, that the claims were self-concealing, or that the SEC acted diligently in pursuing its claims. An act of concealment involves something like creating a dummy corporation to conceal the payment of kickbacks or fabricating meeting minutes to create the appearance that stock options were granted on a particular date. *See Martin*, 966 F.2d at 1095; *SEC v. Berry*, No. C-07-04431, 2008 WL 4065865, at * 8 (N.D. Cal. Aug 27, 2008). "'There must be some trick or contrivance intended to exclude suspicion and prevent inquiry.'" *Martin*, 966 F.2d at 1095 (*quoting Wood v. Carpenter*, 101 U.S. 135, 143 (1879)). Here, the SEC has alleged nothing more than non-disclosure of the alleged fraud and has failed to allege with particularity any conduct constituting affirmative concealment of the trading or alleged agreement at issue.[4]

The SEC concedes the trading was not self-concealing and acknowledges that it was even affirmatively disclosed in Gabelli Funds' public filings. Opp. at n.19; *see also* Memo in Support at 9-10. To support its argument that part of the alleged fraud was self-concealing, the SEC argues that the alleged market-timing agreement was not readily discoverable. Opp. at 17. Although defendants dispute there was any market-timing agreement, the SEC posits that the agreement involved parallel investing by Headstart in the GGGF and a hedge fund managed by Marc Gabelli. Compl. ¶¶ 21-23. There is no allegation that such investing was hidden. "'[I]f the plaintiff has been furnished with the means of knowledge and [it] is not prevented from using them [it] cannot say that [it] has been deceived by the misrepresentations of the other party.'" *Shah*, 435 F.3d at 252 (*quoting Frigitemp Corp. v. Financial Dynamics Fund*, 524 F.2d 275, 282 (2d Cir. 1975)).

Even if the SEC had pled that its claims were affirmatively concealed or self-concealing, the

---

[4] *See* Memo in Support at 8-9; *see also In re Merrill Lynch Ltd. Partnerships Litig.*, 7 F. Supp. 2d 256, 274-75 (S.D.N.Y. 1997); *Farr v. Shearson Lehman Hutton, Inc.*, 755 F. Supp. 1219, 1228 (S.D.N.Y. 1991); *Bilick v. Eagle Elec. Mfg. Co.*, 807 F. Supp. 243, 255-56 (E.D.N.Y. 1992); *Butala v. Agashiwala*, 916 F. Supp. 314, 319 (S.D.N.Y. 1996).

SEC's fraudulent concealment argument fails because the SEC concedes it did nothing to investigate its claims. Contrary to the SEC's argument, *Jones* is directly on point, because the SEC could easily have examined the relevant books and records and learned what it believes is the basis for its claims. *See Jones*, 476 F. Supp. 2d at 383. The SEC's "failure to plead that it engaged in any due diligence is fatal to its fraudulent concealment claims." *World Wrestling Entertainment, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 529-30 (S.D.N.Y. 2007); *see also Butala*, 916 F. Supp. at 319-21; *Griffin v. McNiff*, 744 F. Supp. 1237, 1256 (S.D.N.Y. 1990); *Long v. Abbott Mortgage Corp.*, 459 F. Supp. 108, 118-21 (D. Conn. 1978) (Newman, J.); Memo in Support at 11.[5]

Regardless of whether the SEC's requests for relief are time-barred, the authority relied upon by the SEC confirms it would still not be entitled to the relief it seeks. Because the SEC fails to allege that Alpert is reasonably likely to engage in a future violation of the securities laws, the SEC is not entitled to injunctive relief or civil penalties. *See SEC v. Cavanagh*, 155 F.3d 129, 135-36 (2d Cir. 1998); *SEC v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849, 2008 U.S. Dist. LEXIS 41442, at *7 (S.D.N.Y. May 23, 2008); Memo in Support at 24.[6] Nor is the SEC entitled to disgorgement. *See* Memo in Support at 24-25. Although the SEC argues conclusorily that it seeks disgorgement of "any unjust enrichment" obtained by Alpert as a result of his wrongdoing (Opp. at 21), the Complaint contains no allegation whatsoever that Alpert was unjustly enriched. Under these circumstances, the SEC's request for disgorgement should be dismissed. *See SEC v. DiBella*, 409 F. Supp. 2d 122, 127 (D. Conn. 2006); *Berry*, 2008 WL 4065865, at *9-10; *see also* Memo in Support at 6-7.[7]

---

[5] The SEC argues it could never benefit from fraudulent concealment if it were assumed to have knowledge of what it could learn through the exercise of its examination powers. In fact, if a party conceals wrongdoing or if the wrongdoing is self-concealing, then the SEC would not be able to discover the wrongdoing with its powers and could still benefit from the doctrine. *Berry*, 2008 WL 4065865, at *8.

[6] In any event, civil penalties are not available against an aider and abettor of a violation of the Advisers Act. The court in *SEC v. Bolla*, 550 F. Supp. 2d 54, 58-63 (D.D.C. 2008), considered and rejected all of the SEC's arguments. *See* Gabelli Reply at 10.

[7] The SEC argues it needs discovery to determine whether there is a likelihood Alpert poses a

Because the SEC fails to allege entitlement to any remedies, its claims against Alpert must be dismissed in their entirety.  *See Jones*, 476 F. Supp. 2d at 381-86.

## II. EVEN IF THE SEC WERE ENTITLED TO THE REMEDIES IT SEEKS, THE SEC FAILS TO ALLEGE ANY CLAIMS AGAINST ALPERT.

The Court need not reach the issues concerning the SEC's substantive claims against Alpert if the Court finds the SEC is time-barred from seeking, or failed to allege an entitlement to, any relief. But even if the Court does consider the SEC's substantive claims, the SEC clearly fails to allege any viable claims against Alpert.  The SEC's claims fail substantively in part because the SEC conflates two very different types of market timing and seeks to mislead the Court into believing that Alpert's statements and concerns about scalping, or time-zone arbitrage, applied or should be applied to frequent trading.  Neither the allegations of the Complaint, nor the disclosures upon which the SEC bases its case, permit the SEC to equate scalping and frequent trading.  When the allegations of the Complaint and the SEC's arguments are viewed with the distinction between scalping and frequent trading in mind, it is clear the SEC has no case.[8]

In light of the foregoing, the two disclosures at issue, which concerned scalping, did not require additional disclosure about Headstart's frequent trading.  In addition, given that there was no law requiring disclosure of or prohibiting market timing or market-timing agreements, and further given the absence of prospectus language relating to market timing, Alpert did not perceive and should not have perceived there was anything wrong with Headstart's trading.  *See* Memo in Support at 3, 13, 17.

---

realistic risk of future violations and the extent of his unjust enrichment. Opp. at n. 20, 22.  That argument should be rejected out of hand.  The SEC investigated this case for over four years, took the depositions of approximately ten individuals, including both defendants, and obtained at least approximately 2.7 million pages of document discovery and other data.

[8] The distinction is critical to determining whether Alpert misrepresented any facts or acted with scienter.  Although market timing includes time-zone arbitrage and scalping, which the Complaint alleges Alpert viewed as harmful, market timing also includes frequent trading, which the Complaint does not allege Alpert viewed as harmful.  Compl. ¶¶ 17, 31, 40, 44.  Because the Complaint does not allege that Headstart engaged in time-zone arbitrage or scalping, but does allege that Headstart engaged in frequent trading, it is critically important to distinguish between the different types of market timing.  *See* Memo in Support at 13-14, 21-22.

6

Finally, the SEC's opposition mischaracterizes Alpert's role in the matter. The Complaint does not allege Alpert authorized Headstart's trading or created any market-timing agreement. The Complaint alleges that Marc Gabelli authorized the trading and entered into the alleged agreement. Compl. ¶¶ 20-23. Thereafter, Alpert allowed Headstart's trading to continue because he had no reason to believe it was unlawful or detrimental to the GGGF.

### A. The SEC Fails To Allege Alpert Aided And Abetted A Violation.

The SEC seeks to minimize its pleading obligation by arguing that it is only required to allege Alpert aided and abetted a violation with recklessness. Opp. at 10. However, there is ample precedent for requiring allegations that a defendant acted with actual knowledge of wrongdoing. *See SEC v. Tambone*, 417 F. Supp. 2d 127, 136-37 (D. Mass. 2006); *SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 470 (S.D.N.Y. 2004).[9]

Even if the SEC could plead a claim by alleging recklessness, the SEC fails to allege that Alpert was reckless in not knowing he was a substantial participant in any improper activity by Gabelli Funds. The Complaint does not allege there was any legal authority requiring disclosure of or prohibiting market timing or market-timing agreements or that there was any prospectus language concerning market timing. The Complaint lacks any allegation that anyone told Alpert he believed Headstart's trading to be harmful to the GGGF. And the Complaint shows that Alpert's concerns about market timing were focused on scalping rather than frequent trading. Compl. ¶¶ 31, 44. The allegations that Alpert reviewed Headstart's trading data, knew about Headstart's frequent trading, was in charge of the market-timing police and took steps to limit timers other than Headstart do not show that Alpert knew or should have known of any harm caused by Headstart's trading. The allegations that Alpert knew Headstart was trading frequently fail to show Alpert knew Headstart was scalping or

---

[9] *See also* Memo in Support at 22-23; *SEC v. Espuelas*, __ F. Supp. 2d __, No. 06-Civ.-2435, 2008 WL 4414516, at *19 (S.D.N.Y. Sept. 30, 2008); *SEC v. Pasternak*, 561 F. Supp. 2d 459, 501-02 (D.N.J. 2008).

engaged in time-zone arbitrage, which is the sort of trading Alpert is alleged to have disfavored and believed harmful.[10]

The SEC also argues that it is not required to plead that Alpert proximately caused a violation by Gabelli Funds. Opp. at 10. That argument has no support whatsoever, and is totally inconsistent with numerous decisions in this district.[11] The requirement applies, and the SEC fails to satisfy it by alleging Alpert proximately caused any violation of Section 206 relating to the allowance of trading or the alleged market-timing agreement. *See* Compl. ¶¶ 20-28. The conduct the SEC identifies in its brief (Opp. at 10-11) as somehow proximately causing violations of Section 206 shows at most that Alpert allowed Headstart to trade *after* Marc Gabelli had allegedly authorized the trading and entered into a market-timing agreement. The SEC ignores those allegations, as well as those showing that Alpert thwarted the trading by restricting it and ultimately stopping it altogether. *See* Memo in Support at 23-24.

### B. The SEC Fails To Plead With Particularity That Alpert Misrepresented Any Facts, Participated In Any Scheme Or Did So With Scienter.

Even if many of the SEC's claims for injunctive relief and civil penalties were not time-barred, even if the SEC had alleged facts entitling it to that relief or disgorgement, and even if the SEC had alleged Alpert was a knowing participant in and proximately caused wrongdoing by Gabelli Funds, the SEC's claims all fail because it does not allege a misrepresentation or scheme with particularity, and the SEC's claims under Section 206(1), 10(b) and 17(a)(1) fail for the additional reason that the SEC

---

[10] The SEC argues that Alpert's intent can be inferred from an allegation that he redeemed his holdings in the GGGF after telling someone he believed Gabelli was allowing the GGGF to be scalped. That allegation is not made with particularity and fails in any event to allege Alpert believed the Fund was being scalped by Headstart. *See* Memo in Support at 18-19.

[11] *See Espuelas*, 2008 WL 4414516, at *8; *Power*, 525 F. Supp. 2d at 422; *SEC v. Treadway*, 430 F. Supp. 2d 293, 339-40 (S.D.N.Y. 2006); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 335-36 (S.D.N.Y. 2006). The SEC's argument that the reasoning in aiding and abetting cases involving private securities litigation does not apply to actions by the SEC makes no sense. Its reliance upon *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 197 (1963), is misplaced. Even if the SEC does not seek damages, as the case law demonstrates, the SEC is still obligated to plead that a defendant proximately caused a violation.

does not allege scienter with particularity.

First, the SEC fails to allege any material misrepresentation or omission. As the SEC acknowledges, the February 2001 Board presentation disclosed that scalpers had been trading in the GGGF in a way that was disruptive, and further disclosed that Gabelli Funds was making efforts to restrict them from doing so. Opp. at 4. Those statements are consistent with the facts alleged. Memo in Support at 21-22.[12] As the SEC also acknowledges, the September 2003 memorandum stated that scalpers had been restricted or banned and that the procedures for eliminating scalpers did not completely eliminate all timers. Opp. at 11. Given that the Complaint alleges scalpers had been restricted or banned and that the procedures did not eliminate all timers (Compl. ¶ 35), the statements do not misrepresent any facts. Memo in Support at 12-15.[13] Simply because Alpert addressed scalping in the presentation and memorandum does not mean he was obligated to address frequent trading. By revealing true facts about scalping, Alpert did not obligate himself to disclose other facts about frequent trading, just because the SEC now believes they might have been interesting. *See Glazer v. Formica Corp.*, 964 F.2d 149, 155-57 (2d Cir. 1992); *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc).

Second, the SEC fails to allege a fraudulent scheme. The Complaint does not allege Alpert authorized Headstart's trading or entered into the alleged market-timing agreement. Compl. ¶¶ 20-23. Even if the Complaint did make such allegations, the SEC still fails to allege with particularity that Alpert participated in a scheme or used a fraudulent device, because, among other reasons, market timing and market-timing agreements were not illegal; and allowing trading here was not contrary to any prospectus language or viewed as harmful. *See* Memo in Support at 15-16.

---

[12] Although Section 206 imposes a fiduciary duty upon investment advisers, that is simply a duty to disclose material facts. *See Capital Gains*, 375 U.S. at 197.

[13] The September 2003 memorandum is the only disclosure at issue in the SEC's 10(b) and 17(a) claims. Opp. at 11-14.

Finally, the SEC fails to allege facts giving rise to a strong inference of scienter.[14]  As discussed above, the SEC fails to allege facts showing recklessness, let alone facts giving rise to a strong inference of scienter.  *See* Memo in Support at 16-20; *see also In re Carter-Wallace, Inc. Secs. Litig.*, 220 F.3d 36, 39-41(2d Cir. 2000); *Espuelas*, 2008 WL 4414516, at *10, 13-18; *SEC v. Lucent Techs., Inc.*, No. Civ.-04-2315, 2005 WL 1206841 (D.N.J. May 20, 2005).

## Conclusion

For the reasons set forth above, in Alpert's moving brief and in Marc Gabelli's submissions, the Court should dismiss the SEC's claims against Alpert.

Dated: New York, New York  
       November 3, 2008

DECHERT LLP

By:  /s/ Kathleen N. Massey  
     Edward A. McDonald  
     Kathleen N. Massey  
     Joshua I. Sherman  
1095 Avenue of the Americas  
New York, New York  10036  
(212) 698-3500  
Email: kathleen.massey@dechert.com  
*Counsel for Defendant Bruce Alpert*

13294216

---

[14] The SEC acknowledges it is required to satisfy the strong inference standard.  Moreover, because the SEC does not allege or argue that Alpert had a motive to defraud, the strength of the SEC's allegations of recklessness must be greater than they would be if the SEC had alleged motive.  *See Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).