UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ X
                                           :
SECURITIES AND EXCHANGE COMMISSION,        :
                                           :
                        Plaintiff,         :   Civil Action No. 08-CV-3868 (DAB)
                                           :
             v.                            :
                                           :
MARC J. GABELLI,                           :
and BRUCE ALPERT,                          :
                                           :
                        Defendants.        :
                                           :
------------------------------------------ X

# DEFENDANT BRUCE ALPERT'S ANSWER TO COMPLAINT

Defendant Bruce Alpert ("Alpert"), by and through his attorneys, Dechert LLP, for his Answer to the Complaint of plaintiff Securities and Exchange Commission filed April 24, 2008, hereby responds as follows:

1.      Denies the allegations contained in paragraph 1, except admits that from approximately 1999 to 2002, Marc Gabelli served as a portfolio manager for the Gabelli Global Growth Fund (the "GGGF" or the "Fund') and Alpert was the Chief Operating Officer of Gabelli Funds, LLC ("Gabelli Funds"), and further admits that Alpert knew at some point that Headstart Advisers Ltd. ("Headstart") traded frequently in the GGGF.

2.      Denies the allegations contained in paragraph 2, except admits that the three accounts used by Headstart to trade in the GGGF during the relevant period earned internal rates of return of 185 percent, 160 percent and 73 percent, respectively.

3.      Denies the allegations contained in paragraph 3, except admits that between September 1999 and August 2002, Headstart executed approximately 800 trades or 400 round trips.  Alpert lacks knowledge or information sufficient to form a belief as to the truth of the

13761188

allegation that the aggregate dollar value of Headstart's trades in the GGGF was approximately $4.2 billion.

4.  Denies the allegations contained in paragraph 4, except admits that Alpert restricted certain trading in the GGGF, that neither Alpert nor Marc Gabelli discussed Headstart with the Fund's Board of Directors ("Board") and that on February 21, 2001, Alpert made a presentation to the Fund's Board concerning market timing by time-zone arbitrage. Alpert respectfully refers the Court to the GGGF prospectus for its terms, and the Minutes of Regular Meeting of Board of Directors, February 21, 2001, for a complete summary of Alpert's presentation to the Board.

5.  Denies the allegations contained in paragraph 5, except admits that Alpert wrote a memorandum in September 2003 ("September 2003 Memo") that was placed on Gabelli Funds' website in response to the New York Attorney General's public announcement of its market timing investigations and respectfully refers the Court to the September 2003 Memo for its entire contents. No further response is necessary in light of the Court's Memorandum and Order dated March 17, 2010.

6.  To the extent any response is required to the allegations contained in paragraph 6, denies the allegations.

7.  To the extent any response is required to the allegations contained in paragraph 7, denies that plaintiff is entitled to disgorgement and that Alpert received any ill-gotten gains from illegal conduct. No further response is necessary in light of the Court's Memorandum and Order dated March 17, 2010.

8.  Admits the allegations contained in paragraph 8.

9.  Admits the allegations contained in paragraph 9.

10. Denies the allegations contained in paragraph 10, except admits that Marc Gabelli served as a portfolio manager for the GGGF from 1997 until early 2004, managed several Gabelli-affiliated hedge funds from 1997 until early 2004, has not had responsibility for the management of the GGGF since the end of 2002, ceased working for Gabelli Funds as of January 1, 2006, is the chairman of the board of a publicly-traded company and is the son of the founder of the Gabelli complex of funds.  Alpert lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 10.

11. Denies the allegations contained in paragraph 11, except admits that Alpert has been the Chief Operating Officer of Gabelli Funds since 1988 and that Alpert received a CPA license from the State of New York in 1977.

12. Admits the allegations contained in paragraph 12.

13. Denies the allegations contained in paragraph 13, except admits that the GGGF is an open-end investment company registered under the Investment Company Act, that the Fund was previously known as the Gabelli Global Interactive Couch Potato Fund until January 13, 2000, that it changed its name to the GAMCO Global Growth Fund effective December 23, 2005, and that during the relevant period it had as its primary investment objective to provide investors with appreciation of capital and invested primarily in common stocks of domestic and foreign issuers in at least three countries.

14. Admits the allegations contained in paragraph 14.

15. Denies the allegations contained in paragraph 15, except admits that many mutual funds are meant to be long-term investments for buy-and-hold investors and that some investors have attempted to trade in and out of some mutual funds to exploit inefficiencies arising out of stale prices.

16. Admits the allegations contained in paragraph 16.

17. Denies the allegations contained in paragraph 17, except admits that traders who engage in market timing by time-zone arbitrage, which Gabelli Funds refers to as "scalping," attempt to take advantage of stale pricing of shares of mutual funds that hold a significant amount of foreign securities.

18. Denies the allegations contained in paragraph 18, except admits that traders who engage in market timing by time-zone arbitrage, or scalping, can be detrimental to other long-term shareholders of a fund.

19. Denies the allegations contained in paragraph 19, except admits that traders who engage in market timing by time-zone arbitrage, or scalping, can cause funds to incur additional transaction costs, to keep excess cash on hand, to purchase or sell securities at less than optimal times, and to realize losses or taxable gains that might not otherwise have been realized.

20. Denies the allegations contained in paragraph 20, except admits that Alpert placed restrictions on Headstart's trading and lacks knowledge or information sufficient to form a belief as to whether Marc Gabelli met Najy Nasser in the summer of 1999 at a hedge fund conference.

21. Denies the allegations contained in paragraph 21, except admits that in April 2000 Headstart increased its investment in the GGGF by approximately $13 million.

22. Denies the allegations contained in paragraph 22, and respectfully refers the Court to the quoted email for its entire contents.

23. Denies the allegations contained in paragraph 23, except admits that in April 2000 Headstart increased its investment in the GGGF by approximately $13 million and invested $1 million in a hedge fund managed by Marc Gabelli, and respectfully refers the Court to the

referenced emails for their entire contents. Alpert lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the final sentence of paragraph 23.

24. Denies the allegations contained in paragraph 24, except admits that from April 2000 until the Spring of 2002, Headstart frequently traded in the GGGF through three separate accounts.

25. Denies the allegations contained in paragraph 25, except admits that on or around April 1, 2002, and thereafter, Alpert instructed Headstart to reduce its trading in the GGGF, and respectfully refers the Court to the quoted emails for their entire contents.

26. Denies the allegations contained in paragraph 26, but admits that Headstart redeemed a portion of its investment in a hedge fund managed by Marc Gabelli after having been instructed to reduce its trading in the GGGF, and respectfully refers the Court to the quoted emails for their entire contents.

27. Denies the allegations contained in Paragraph 27, but admits that Headstart traded certain amounts in the GGGF after having been instructed to reduce its trading in the fund, until Headstart was no longer permitted to trade in the GGGF August 2002.

28. Denies the allegations contained in paragraph 28, but admits that on August 7, 2002, Alpert informed Headstart it would be permitted no further purchases in the GGGF and would not be permitted to establish a new account, and further admits that Headstart subsequently redeemed its remaining investment in a hedge fund managed by Marc Gabelli. Alpert respectfully refers the Court to the written communications by the CEO of Gabelli Funds' parent company and Alpert for their entire contents.

29. Admits the allegations contained in Paragraph 29.

30. Denies the allegations contained in paragraph 30, except admits that, beginning at least as early as December 2000, Gabelli Funds excluded traders from the GGGF and other funds where fund management believed it was in the funds' best interest to do so. Alpert respectfully refers the Court to the GGGF prospectuses for their entire contents.

31. Denies the allegations contained in paragraph 31, except admits that Alpert instructed certain Gabelli Funds employees to review and reject purchases in the global and international funds where fund management believed it was in the funds' best interest to do so. Alpert respectfully refers the Court to the December 15, 2000 internal memo for its entire contents.

32. Denies the allegations contained in paragraph 32, and respectfully refers the Court to the quoted email for its entire contents.

33. Denies the allegations contained in paragraph 33.

34. Denies the allegations in paragraph 34, except admits that when a purchase was rejected or an account banned, Gabelli Funds sent a letter to the broker whose customer originated the trade. Alpert respectfully refers the Court to the quoted letter for its entire contents.

35. Denies the allegations in paragraph 35, except admits that Headstart frequently traded amounts up to $20 million in the GGGF, that Gabelli Funds reviewed trades as small as $100,000 and that Gabelli Funds rejected purchases or banned accounts where fund management believed it was in the funds' best interest to do so.

36. Admits that on February 21, 2001, Alpert made a presentation to the Fund's Board concerning market timing by time-zone arbitrage, or scalping, and that Alpert did not disclose anything about Headstart to the Board. Alpert respectfully refers the Court to the

Minutes of Regular Meeting of Board of Directors, February 21, 2001, for a complete summary of that presentation.

37. Admits the allegations contained in paragraph 37 that Marc Gabelli attended at least a portion of the Board meeting on February 21, 2001, reported on the operations of the GGGF and did not disclose anything about Headstart to the Board.

38. Denies the allegations contained in paragraph 38, except admits that neither Alpert nor Marc Gabelli disclosed anything about Headstart's trading to the Board. Alpert respectfully refers the Court to the Minutes of Regular Meeting of Board of Directors, February 21, 2001, for a complete summary of Alpert's presentation to the Board.

39. Denies the allegations contained in paragraph 39, except admits that the three accounts used by Headstart to trade in the GGGF during the relevant period earned internal rates of return of 185 percent, 160 percent, and 73 percent, respectively, and that Headstart's total profits from such trades were approximately $9.7 million.

40. Denies the allegations contained in paragraph 40, except admits that between September 1999 and August 2002, Headstart executed approximately 800 trades or 400 round trips. Alpert lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the aggregate volume of Headstart's trades in the GGGF was approximately $4.2 billion.

41. Denies the allegations contained in paragraph 41.

42. Denies the allegations contained in paragraph 42, except admits that information on Headstart's and all other trading in the GGGF was available to Alpert and Marc Gabelli and was in fact reviewed by Alpert. Alpert lacks knowledge or information sufficient to form a

belief as to Marc Gabelli's review of such information and respectfully refers the Court to the quoted emails for their entire contents.

43.  Admits the allegations contained in paragraph 43.

44.  Admits the allegations contained in paragraph 44, and respectfully refers the Court to the September 2003 Memo for its entire contents.

45.  No response to the allegations contained in paragraph 45 is necessary in light of the Court's Memorandum and Order dated March 17, 2010.

46.  No response to the allegations contained in paragraph 46 is necessary in light of the Court's Memorandum and Order dated March 17, 2010.

47.  No response to the allegations contained in paragraph 47 is necessary in light of the Court's Memorandum and Order dated March 17, 2010.

### IN ANSWER TO THE FIRST CLAIM

48.  Repeats and incorporates his answers to paragraphs 1 through 47.

49.  No response to the allegations contained in paragraph 49 is necessary in light of the Court's Memorandum and Order dated March 17, 2010.

50.  No response to the allegations contained in paragraph 50 is necessary in light of the Court's Memorandum and Order dated March 17, 2010.

### IN ANSWER TO THE SECOND CLAIM

51.  Repeats and incorporates his answers to paragraphs 1 through 50.

52.  No response to the allegations contained in paragraph 52 is necessary in light of the Court's Memorandum and Order dated March 17, 2010.

53.  No response to the allegations contained in paragraph 53 is necessary in light of the Court's decision dated March 17, 2010.

## IN ANSWER TO THE THIRD CLAIM

54. Repeats and incorporates his answers to paragraphs 1 through 53.

55. Denies the allegations contained in paragraph 55.

56. Denies the allegations contained in paragraph 56.

57. Denies the allegations contained in paragraph 57.

58. Denies the allegations contained in paragraph 58.

59. Denies that the SEC is entitled to the remedy of disgorgement and that Alpert received any ill-gotten gains.  No further response to the allegations contained in paragraph 59 is necessary in light of the Court's Memorandum and Order dated March 17, 2010.

## AFFIRMATIVE DEFENSES

Bruce Alpert asserts the following affirmative defenses, without prejudice to his right to assert additional affirmative defenses if appropriate based upon information subsequently obtained through discovery or otherwise.

## FIRST AFFIRMATIVE DEFENSE

60. Plaintiff's only remaining cause of action fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

61. Plaintiff's only remaining cause of action is barred by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

62. Plaintiff's only remaining cause of action is barred by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

63. Plaintiff's only remaining cause of action fails because the conduct alleged to have been engaged in by Alpert or to have been omitted was done or omitted in good faith.

## FIFTH AFFIRMATIVE DEFENSE

64. Alpert incorporates herein any applicable affirmative defenses asserted by Marc Gabelli.

Dated: New York, New York
April 16, 2010

DECHERT LLP

By: /s/ *Kathleen N. Massey*
Edward A. McDonald
Kathleen N. Massey
Joshua I. Sherman

1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Fax: (212) 698-3599
kathleen.massey@dechert.com

*Counsel for Defendant Bruce Alpert*